RAABE *v.* CITY OF WALKER.

1. ZONING—VALIDITY—PRESUMPTION.
    A zoning ordinance is presumed initially to be a valid exercise of the police power vested in the zoning authority.

2. SAME—VALIDITY—BURDEN OF PROOF.
    A party attacking the validity of a zoning ordinance has the burden of proving that it bears no relation to the public

---

REFERENCES FOR POINTS IN HEADNOTES

[1]  58 Am Jur, Zoning § 18.
[2]  58 Am Jur, Zoning § 16.
[3]  58 Am Jur, Zoning § 255.
[4]  58 Am Jur, Zoning § 22.
[5]  58 Am Jur, Zoning § 21.
[6, 7]  58 Am Jur, Zoning §§ 6, 27.
[8]  58 Am Jur, Zoning § 125.
[9–12]  58 Am Jur, Zoning § 32 *et seq.*
[13]  58 Am Jur, Zoning § 229 *et seq.*
[14]  5 Am Jur 2d, Appeal and Error § 1009.

health, safety, and welfare and that it therefore is an improper exercise of the legislative power.

3. SAME—APPEAL AND ERROR.

Appeal of a zoning case is heard *de novo* by appellate courts.

4. SAME—VALIDITY—REASONABLENESS.

Determination of the validity of a zoning ordinance requires deciding whether the ordinance is reasonable in reference to the factual situation of each particular case, applying the statute and case law.

5. SAME—VALIDITY—REASONABLENESS.

An appellate court will not strike down a zoning ordinance unless it appears that there is no question that the ordinance is unreasonable.

6. SAME—MASTER PLAN—WRITING.

Requirement of zoning enabling statute that zoning be in accordance with a plan does not require that there be a written master plan before amendments may be made to existing zoning but only that there be evidence of some rational procedure to insure that the property in question will be put to its best use in keeping with the physical, economic, and social needs of the general community (CL 1948, § 125.581).

7. SAME—PLAN—REZONING.

Rezoning of land for use as an industrial park, done after a meeting to consider proposed rezoning at which the aims of the planned industrial park were considered, its desirability in relation to the surrounding residential area was studied, suggestions and recommendations were offered by consulting engineer and a municipal planner, and the city commission had before it an analysis of the proposed development and its ramifications, *held*, to have been done according to a plan as required by the zoning enabling statute (CL 1948, § 125-.581).

8. SAME—TRAFFIC VOLUME.

Traffic volume is an important consideration in the zoning of land but does not of itself determine the validity of the zoning, and it is only when the increase in traffic caused by rezoning becomes unreasonable that a court is warranted in striking down a zoning ordinance.

9. SAME—INDUSTRIAL ZONE—NOISE, SMOKE, AND VIBRATION—CONTROL DEVICES.

Zoning of land for industrial use should be examined to see whether or not the resulting danger to the general community

from noise, smoke, and vibrations emanating from the industrial zone would be unreasonable in light of the safeguards and control devices planned, and the difficulty and expense in keeping control devices operative is not a proper issue before the court.

10. SAME—ORDINANCE—VALIDITY—FINDING OF TRIAL COURT.

Finding of trial court that amendment to zoning ordinance would not promote the health and safety of the community, because it was not designed to lessen congestion on the public streets, that noise, smoke, and vibrations emanating from the property in its new use would jeopardize public health, and that it did not promote the public welfare because there was adequate land in other parts of the city to accommodate the proposed development and its consequent holding that the zoning change was invalid *held,* not supported by the evidence in the record.

11. SAME—INDUSTRIAL USES—LOCATION OF LAND.

Terrain, accessibility to nearby railroad and expressway, job potential, and increase of tax base for city in which planned industrial park was proposed are legitimate considerations for the city government and are indications that the rezoning of agricultural land for light and heavy industrial use was reasonable.

12. SAME—REZONING—AGRICULTURAL USE—INDUSTRIAL USES.

Rezoning of agricultural area to light and heavy industrial uses was not unreasonable, where tract was vacant land, evidence is not convincing it would be used for residences, part of the surrounding area is already zoned for heavy industrial use, and there is evidence a buffer zone will be provided between the tract and nearby residences using trees and shrubbery to alleviate any esthetic objection.

13. SAME—CITY COUNCIL—COURTS.

It is not within the competence of a court to substitute its judgment for that of a city legislative body in the matter of rezoning land within the city in the absence of a showing of arbitrary or unreasonable action, as a court does not sit as a superzoning commission.

14. COSTS—PUBLIC QUESTION—ZONING ORDINANCE.

No costs are allowed on appeal by a city from judgment of a trial court holding a zoning ordinance change to be invalid, a public question being involved.

Appeal from Kent; Searl (Fred N.), J. Submitted Division 3 June 7, 1967, at Grand Rapids. (Docket No. 2,534.) Decided March 28, 1968. Leave to appeal granted September 30, 1968. See 381 Mich 779.

Complaint by Charles G. Raabe and 43 others, homeowners, against the City of Walker, for injunctive relief to prevent rezoning of certain land for industrial purposes, and to prevent the use of the land for industrial purposes. The Grand Rapids Chamber of Commerce and Grand Rapids Industrial Corporation intervened as defendants. Judgment for plaintiffs. Defendants appeal. Reversed.

*Bergstrom, Slykhouse & Shaw* (*H. David Soet,* of counsel), for plaintiffs.

*Varnum, Riddering, Wierengo & Christenson* (*Peter Armstrong,* of counsel), for defendants.

Wise, J. The defendants appeal from a decision of the circuit court for the county of Kent wherein the court found the rezoning of certain realty within the city of Walker to have been an improper exercise of the police powers.

The realty in dispute consists of an 180-acre tract of land located in the city of Walker and west of the city of Grand Rapids.[1] The tract is bounded on the

[1] The description of the realty reads as follows:
"That part of section 8, township 7 north, range 12 west, city of Walker, Kent county, Michigan, described as: commencing at a point on the east line of section 300 feet north of the southeast corner thereof, thence west parallel with the south line of said section to a point 100 feet east of the north and south 1/4 line, thence north parallel with said 1/4 line to southerly right-of-way line of the Pennsylvania railroad, thence easterly along said railroad right-of-way to the east line of said section, thence south along the east line of said section to the place of beginning, excepting therefrom, however, that part of said described property lying within 500 feet of the Pennsylvania railroad tracks."

south by Richmond street, on the north by the Pennsylvania railroad tracks, on the west by Kinney avenue and on the east by Elmridge drive and the Grand Rapids-Walker city limits.

Prior to the rezoning the entire tract was zoned "AA" agricultural with the exception of 500 feet to the south of the Pennsylvania railroad tracks, which was zoned "D–2" heavy industrial.

The plaintiffs are homeowners residing at various points on the north side of Richmond street, in a 230-foot residential strip on the west side of Elmridge drive, on Lamont avenue, and in a residential area to the south between Richmond street and Remembrance road.

On February 28, 1966, C. A. Bradshaw, in a letter addressed to the planning commission for the city of Walker, said that he had acquired options on the realty in question and on behalf of an undisclosed client asked that it be rezoned to allow the development of an industrial park. It was later revealed that the requested rezoning was made in behalf of the Greater Grand Rapids Chamber of Commerce and the Grand Rapids Industrial Corporation.

On March 25, 1966, the Walker city commission held a public hearing on the rezoning request and heard arguments of those in opposition to the proposed change. Ultimately the commission approved the adoption of an ordinance to amend the existing ordinance to rezone the south 500 feet of the realty "D–1" light industrial and the remaining portion "D–2" heavy industrial.

On April 14, 1966, the plaintiffs, some 22 families living in the area adjacent to the proposed industrial park, filed suit against city of Walker contesting the validity of the zoning amendment. The Grand Rapids Chamber of Commerce and the Grand Rapids Industrial Corporation were allowed to intervene as defendants.

The trial court found that the rezoning was not in the public interest, did not meet the requirements of the enabling act[2] and was an improper exercise of the police power. The court ordered that the defendant, city of Walker, be permanently enjoined from utilizing the realty for industrial purposes. It is from that decision that the defendants bring the present appeal.

The sole question raised on appeal is whether the rezoning of the tract was a valid exercise of the legislative power or not.

It is apparent from the number of zoning cases that have been before the courts of this State that the entire area has caused a great deal of confusion. It is therefore important, in disposing of the instant appeal, that this Court attempt to disclose the guidelines upon which we rest our decision. It is elemental that the zoning of property within any political subdivision is an exercise of the police power vested in the governmental authority and as such must have as its aim the betterment of the total community. It is disagreement as to whether the proposed zoning benefits the total community that promotes the kind of litigation we have in this appeal.

Initially a zoning ordinance is presumed to be a valid exercise of the police power. *Muffeny* v. *City of Southfield* (1967), 6 Mich App 19; *Christine Building Company* v. *City of Troy* (1962), 367 Mich 508. Because the ordinance is clothed with a presumption of validity, the party attacking such validity has the burden of proving that it bears no relation to the public health, safety, and welfare and therefore is an improper exercise of the legislative power. *Janesick* v. *City of Detroit* (1953), 337 Mich 549; *Township of Pittsfield* v. *Malcolm* (1965), 375

---

2 CL 1948, § 125,581 (Stat Ann 1958 Rev § 5.2931).

Mich 135. In addition each appeal from a zoning case is heard *de novo* by the appellate courts. *Muffeny* v. *City of Southfield, supra.*

The appellate courts in determining the validity of a zoning ordinance, as in this appeal, must address themselves to the question of whether the ordinance is reasonable. *Christine Building Company* v. *City of Troy, supra; Spanich* v. *City of Livonia* (1959), 355 Mich 252. See, also, Crawford, Michigan Zoning and Planning, chapter 7. The question of "reasonableness" must be answered in reference to the factual situation involved in each particular case, *Hungerford* v. *Township of Dearborn* (1960), 362 Mich 126, applying the guidelines set forth in the statutes and case law.

As to whether a particular ordinance is reasonable the often cited case of *Brae Burn, Inc.,* v. *City of Bloomfield Hills* (1957), 350 Mich 425, enunciated the rule that an appellate court will not strike down a zoning ordinance unless it appears that there is no fairly debatable question as to its reasonableness. Following the *Brae Burn* decision in *Alderton* v. *City of Saginaw* (1962), 367 Mich 28, the Supreme Court chose to further clarify the "debatable question rule" in *Brae Burn* and set forth additional guidelines to be used in the determination of "reasonableness". At pages 33 and 34 the Court stated:

"The debatable question rule as presented in *Brae Burn, supra,* does not mean such question exists merely because there is a difference of opinion between the zoning authority and the property owner in regard to the validity of the ordinance. If this were the case, no ordinance could ever be successfully attacked.

"In determining validity of an ordinance we give consideration to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the general trend and

character of building and population development; * * * unsuitability for residential purposes; * * * lack of market for such purpose, * * * and whether the land will become 'dead land' or non-income-producing land without residential value."

Mindful of various areas for consideration in *Alderton, supra,* and the "debatable question rule" in *Brae Burn, supra,* and giving consideration to the fact finding of the trial court, we apply the facts and circumstances of the instant case to the factors enunciated in the enabling statute in reaching our decision.

The enabling statute requires, among other things, that the zoning be made "in accordance with a plan". The plaintiffs contend that the absence of a master plan or some overall comprehensive scheme invalidated the disputed zoning. The enabling statute does call for a plan but does not require that there be a written master plan before amendments be made to the existing zoning. To concur in such a position would severely hamper the growth of any community similar to the city of Walker. We read the statute to require that prior to zoning there be evidence of some rational procedure to insure that the property in question will be put to its best use in keeping with the physical, economic, and social needs of the general community. On March 1, 1966, the Walker city commission held a meeting to consider the proposed rezoning. At this meeting the aims of the planned industrial park were considered, and its desirability in relation to the surrounding residential area was studied. Suggestions and recommendations were offered by Mr. Farrell, a consulting engineer, and Mr. Miller, a municipal planner. Further, the commission had before it "The Case for an Industrial Park in Walker City", an analysis of the proposed development and its ramifications.

This Court concludes that leading up to the ultimate rezoning there was a "plan" consistent with the enabling statute. The most pertinent issue or inquiry therefore is whether the plan presented was designed to effectuate the purpose of the statute.

The trial court found that the proposed zoning was not "designed to lessen congestion on the public streets". Traffic volume is of course an important consideration but should not in itself invalidate zoning. The tract in question is presently vacant land and it is certainly reasonable to assume that the construction of any building thereon, regardless of its character, would generate more traffic. The trial court did not address itself to the question of whether the possible increase in traffic was reasonable, which certainly should have been a consideration. The alleviation of traffic conditions rests upon the city planners and not upon the court, and it is only when the increase in traffic becomes unreasonable that the court is warranted in striking down a zoning ordinance as the cause. We acknowledge that the evidence in the instant case does not clearly establish that traffic will be lessened but conclude that the evidence is insufficient to reach the determination that an increase in traffic would be unreasonable.

The trial court determined that the planned development would not promote the health and safety of the community. The record shows that Dr. Frederick, director of the bureau of industrial hygiene for the city of Detroit, testified as to difficulty and expense involved in controlling noise, smoke, and vibrations emanating from such a development. On the other hand Mr. Boelins, director of inspection services for the city of Grand Rapids, while acknowledging the difficulties involved, testified that the utilization of proper control devices would keep noise, smoke and vibrations to a safe

level. Further, the Grand Rapids Industrial Corporation had drawn up protective covenants which were to be imposed upon the prospective industries within the development. The difficulty and expense in keeping control devices operative is not a proper issue before the court. The inquiry should be whether or not the resulting danger to the general community in light of the planned safeguards would be unreasonable. We find that the record does not support a conclusion that public health and safety would be unreasonably jeopardized and at most would present a debatable question within the meaning of *Brae Burn, supra.*

The plaintiffs contend and the trial court found that the proposed ordinance did not promote the public welfare. The trial court concluded that there was adequate land in other parts of the city of Walker to accommodate the proposed development. The record does not show that there was land in the surrounding area suitable; on the contrary, the record discloses that the chosen site was the most suitable from the standpoint of terrain and accessibility to the nearby railroad and expressway. The success or failure of the development hinged upon proper location, the absence of which certainly would have a damaging effect on the industries involved and the community. The position of the defendants that the planned industrial park will be instrumental in providing jobs for the community and will increase the tax base of the city of Walker are legitimate considerations for the city government and are further indications that the rezoning was reasonable.

Last, it cannot be said that consideration was not given to the character of the surrounding area. The proposed zoning is not a case where an industrial zone is arbitrarily being placed in the midst of a

residential area. In the instant case part of the surrounding area is already zoned for heavy industrial use. The tract itself is vacant land and the evidence is not clearly convincing that it will be used for residences. Further, there is evidence that there will be provided a buffer zone between the planned development and nearby residences, utilizing trees and shrubbery, to alleviate any esthetic objection. We conclude that due consideration was given to the surrounding area in reaching the ultimate decision to rezone.

It cannot be said that the presumption of validity clothing the ordinance has been rebutted.

The record does not show that the action of the legislative body was arbitrary or unreasonable, and that alone should have been the only consideration for the trial court.

It is certainly the responsibility of the city planners of the city of Walker to plan for the future growth and development of their community, and it does not lie within the competence of a court to substitute its judgment for that of the city council. In reaching our decision we adopt the following language of *Brae Burn, Inc., supra,* at pages 430, 431, which reflects our thinking:

"This Court does not sit as a superzoning commission. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. * * * It is not our function to approve the ordinance before us as to wisdom or desirability. * * * We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises. * * *

" 'Unless it can be shown that the council acted arbitrarily or unreasonably, their determination is final and conclusive and no court may alter or modify the ordinance as adopted.' "

The judgment of the trial court is reversed. No costs, a public question being involved.

HOLBROOK, P. J., and BURNS, J., concurred.