RAABE v. CITY OF WALKER.

1. ZONING—MUNICIPAL PLANNING—PLANNING COMMISSION—MASTER PLAN—STATUTES.

A municipality which by ordinance creates a planning commission with the powers and duties given by the statute providing for city and village planning is required by that statute to adopt formally a master plan for the physical development of the municipality (MCLA § 125.31 *et seq.*).

2. ZONING — ORDINANCES — AMENDMENT — GENERAL DEVELOPMENT PLAN — PUBLIC PURPOSE.

Municipality's rezoning of property for industrial use by amendatory ordinance is invalid where the municipality has no general plan for physical development, where the rezoning creates a comparatively small zone of permitted use inconsistent with the larger area, where there is no showing of a valid need in the name of public health, safety, or welfare, and where such changes in conditions as have occurred have been in the direction of increased residential development.

3. ZONING—ORDINANCES—AMENDMENT—VALIDITY—MASTER PLAN—PRESUMPTION.

Adoption of an amendatory ordinance rezoning property ordinarily gives rise to a presumption of reasonableness and validity, but where there is no master plan as required by statute, but only a plan proposed by the property developer requesting rezoning, that presumption does not arise (MCLA § 125.36).

REFERENCES FOR POINTS IN HEADNOTES
[1, 6]  58 Am Jur, Zoning § 6.
[2, 4]  58 Am Jur, Zoning §§ 33, 169 *et seq.*
[3]  58 Am Jur, Zoning §§ 16, 21, 256.
[5]  58 Am Jur, Zoning §§ 16, 21, 142, 256.
[7]  58 Am Jur, Zoning § 192.

4. Zoning—Amendment—Stabilization—Public Purpose.

Amendment or repeal of zoning laws should be carefully considered and prepared, for the purpose of zoning is stabilization of existing conditions subject to orderly development and improvement of the zoned area, and amendments not made cautiously and only when required by changing conditions destroy the purpose of zoning.

5. Zoning—Presumption—Rezoning—Mistake—Change in Character of Property.

Zones established by an original zoning ordinance are presumed to be well planned and arranged and intended to be permanent; therefore before property is rezoned there should be proof, either that there was some mistake in the original zoning or that the character of the neighborhood has changed so that the property is properly subject to rezoning.

6. Zoning—Municipal Plan—Validity of Zoning—Presumption.

Absence of a formally adopted municipal plan, whether required by statute or not, does not invalidate municipal zoning or rezoning, but it does weaken the presumption of validity and reasonableness which attends a regular municipal zoning ordinance or its amendment.

7. Zoning—Rezoning—Ordinances—Laches.

No claim of laches can be made where plaintiffs moved promptly to challenge a rezoning ordinance and where no steps of substance had been taken on strength of the rezoning ordinance before their action.

Appeal from Court of Appeals, Division 3, Holbrook, P. J., and Burns and Wise, JJ., reversing Kent, Fred N. Searl, J. Submitted December 4, 1969. (Calendar No. 37, Docket No. 52,011.) Decided March 9, 1970.

10 Mich App 383, reversed.

Complaint by Charles G. Raabe and 43 others, homeowners, against the City of Walker, for injunctive relief to prevent rezoning of certain land for industrial purposes, and to prevent the use of land for industrial purposes. The Grand Rapids

Chamber of Commerce and Grand Rapids Industrial
Corporation intervened as defendants.   Judgment
for plaintiffs.   Defendants appealed to Court of
Appeals.   Reversed.   Plaintiffs appeal.   Judgment
of the Court of Appeals reversed, and remanded
for reinstatement of the trial court's judgment.

*Bergstrom, Slykhouse & Shaw* (*H. David Soet,*
of counsel), for plaintiffs.

*Varnum, Riddering, Wierengo & Christenson*
(*Peter Armstrong,* of counsel), for defendants.

BLACK, J.   The defendant city of Walker is an
adjacent suburb of Grand Rapids.   By letter dated
February 28, 1966, addressed to its city commission
and city planning commission, defendants Greater
Grand Rapids Chamber of Commerce and Grand
Rapids Industrial Corporation requested that a tract
of 180 acres, situated in Walker, be *rezoned* "for
heavy industry."   The request, pressed from the
beginning for nimble action, was referred promptly
to the Walker planning commission and by that
commission to the city's planning consultant, Robert
C. Dieball.   We shall come presently to their view
of the request.

March 16, 1966, the city clerk published notice of
a special public meeting of the city commission to
consider the request.   The meeting was set for
March 25, 1966, and conducted as noticed.   The
plaintiff homeowners appeared by counsel and un-
successfully opposed the request.   The amendatory
ordinance in question was enacted by the city com-
mission at close of the meeting.   This suit to enjoin
followed immediately.   The circuit judge found in-
valid the rezoning effected by the amendatory ordi-
nance.   Appeal by the defendants resulted in

reversal. *Raabe* v. *City of Walker* (1968), 10 Mich App 383. We granted leave to review September 30, 1968.

Adopted as our own is the basic statement of facts prepared by the circuit judge. It proceeds:

"This action involves the validity of the zoning as industrial of approximately 180 acres of land situated in the city of Walker and now zoned 'agricultural.' Permitted in this zone are uses permitted in the residential districts, farming, greenhouses, country clubs, and accessory uses.

"As rezoned, the largest portion of the 180 acres is zoned for so-called heavy industrial use, and permitted in such a zone are any uses permitted in the light industrial zones and a considerable number of other industries such as leather fabrication, cement packaging, concrete products manufacture, coal yards, breweries or distilleries, flour or grain mills, forge and foundry works, meat processing, metal fabrication, wood and fibre products manufactures.

"A portion on one end of the area is rezoned as light industrial, and permitted here are biological, chemical, electronic or pharmaceutical manufacturing, furniture manufacturing, food processing and packaging, machine shops, glass fabrication, plastics manufacturing, truck terminals, and other similar uses.

"The rezoning resulted from an application for that purpose by the Grand Rapids Chamber of Commerce and the Grand Rapids Industrial Corporation, which latter corporation proposed to acquire this 180 acres of land, all of which is under option, except one parcel which has been purchased, and hold it for sale to industries which can be persuaded to locate in the metropolitan area of Grand Rapids. Eventually it is intended that the area will be developed under the direction and control of the industrial corporation as an 'industrial park', subject to certain restrictive covenants which,

although not yet executed, have been prepared and were received in evidence.

"The surrounding area has in recent years been developed as a residential community and there are a considerable number of fairly expensive residences in the neighborhood. The owners of these homes, some of whom live in the adjoining city of Grand Rapids, and total in number several hundred, oppose [opposed] the rezoning before the city's legislative body.

"The land rezoned is in itself suitable either for residential use or industrial use. It is not in any sense confiscatory, it is zoned as agricultural-residential. It further meets the requirements more or less agreed upon by the expert witnesses for an industrial park, subject to the question whether such use is compatible with the community. It has access to a railroad siding and to a main express highway. It will within a reasonable time have available utility services and it has a suitable topography.

"Walker City lies directly west of the city of Grand Rapids. It was formerly the township of Walker and that part of the township which had not been annexed to the city of Grand Rapids, incorporated as a city. It has about 10,000 population."[1]

As oral argument of this latest zoning case proceeded with responses of counsel to successive inquiries submitted from the bench, rightful determination of the appeal did not appear quite so difficult as on initial perusal of the respective briefs. Like the application granted August 3, 1967, for review of *Biske* v. *City of Troy* (1969), 381 Mich 611, the application of these plaintiffs brought to primary attention the absence of that which, since

---

[1] Occasional doubt having been expressed since creation of the Court of Appeals, we deem it due to say that equity cases upon grant of leave to appeal are still heard and determined *de novo* by this Court. That factor, saying nothing of others, dissociates this case from the mandamus action which, in 1957, was decided by *Brae Burn, Inc.* v. *City of Bloomfield Hills* (1957), 350 Mich 425.

the effective date of PA 1931, No 285, has been required of the planning commission of any municipality which, by ordinance as done here, has created "a planning commission with the powers and duties herein set forth" (from § 2 of the act), that is, the formal adoption under § 6 of the act of "a master plan for the physical development of the municipality".[2]

The issue being one of validity of *rezoning,* we were impelled primarily to grant leave for test of the circuit judge's finding No 1 in array with the contrary view of Division 3. The following selections, from the respective opinions below, adequately pose the array:

The circuit judge found:

"1. The regulation must be made in accordance with a plan. In this case there was no general plan, and the rezoning was not a part of any such general plan."[3]

Division 3, reversing upon reference to the "enabling statute", that only (CL 1948, § 125.581; MCLA § 125.581; Stat Ann 1969 Rev § 5.2931), treated the point this way (p 390):

"The enabling statute requires, among other things, that the zoning be made 'in accordance with a plan'. The plaintiffs contend that the absence of a master plan or some overall comprehensive scheme invalidated the disputed zoning. The enabling statute does call for a plan but does not require that there be a written master plan before amendments be made to the existing zoning. To concur in such a position would severely hamper the growth of any

---

[2] The act of 1931, as amended, is cited properly as CLS 1961, § 125.31 *et seq.* (MCLA § 125.31 *et seq.;* Stat Ann 1969 Rev § 5.2991 *et seq.*).

[3] This quotation is the beginning sentence only of the Judge's reasons for upholding plaintiffs' complaint as against the city's rezoning action. The continuant context appears *post,* pp 175, 176.

community similar to the city of Walker. We read the statute to require that prior to zoning there be evidence of some rational procedure to insure that the property in question will be put to its best use in keeping with the physical, economic, and social needs of the general community."

Walker's planning commission does not seem to have taken kindly to the rezoning which the defendant Chamber and Industrial Corporation proposed. After the issue had been referred to it, and but a few days prior to the special meeting of the city commission at which the rezoning was approved and ordained, the planning commission wrote the city commission:

"A motion was made by Esther Thomasma to inform the city of Walker commission that the planning commission of Walker cannot make a recommendation at this time because of the lack of a definite plan on the part of the petitioners for the rezoning. The motion was supported by Chester Myslewiec. Motion carried unanimously."

The planning commission's action was doubtless taken on account of a report it had just received from the city's "professional planning consultant," Robert C. Dieball. Mr. Dieball's conclusions, set forth in the report (dated March 7, 1966) were these:

"After reviewing the foregoing and making several attempts at a pre-preliminary land use arrangement of the general area in question, I feel that:

"The request to rezone additional land in this area to an industrial land classification is a valid one; however, a better solution to ultimate traffic problems is required and greater detailed planning for land use in this whole mile-square-plus area is mandatory. Reviewing these major matters on a piecemeal basis, rather than as the city in its entirety, is hazardous. However, in defense of the

request, I repeat that it appears logical, but prepared without total thought to the ultimate land development of not only the petitioners' parcel, but adjoining property as well.

"I recommend that the property along Richmond to the north remain residential (single-family) to a depth of 300 feet or greater. In your total land use plan this area may become one of light manufacturing or office.

"I also recommend that the land north of this 300 foot area be rezoned to light industrial to a depth of approximately 1,200 feet from the residential area north; that the area north of this be heavy industrial but that no action be taken until the industrial development commission agrees to plat this land as an industrial park and files deed restrictions equal to, or more restrictive than, those developed for the Kent Industrial Center (copy attached); and, further, that it be understood and agreed to, in writing, by all parties concerned, that access from the heavy industrial zone will not be allowed to Richmond avenue until such time as the city of Walker is satisfied that such would not be detrimental to the interests of those persons living or owning property south of Richmond, and to the best interests of the city as a whole."

During the trial Mr. Dieball was called to the stand by plaintiffs. He testified on direct examination, and then upon cross-examination by the defendant city's counsel:

[*Direct examination*]
"*Q*. Would you consider this [the rezoning in question] a major change in zoning?

"*A*. Yes, I would.

"*Q*. Would you recommend a major change in zoning without a thorough and comprehensive study of the entire area?

"*Mr. Hutchinson:* Would he recommend it?

"*Q.* Would he recommend a major change in zoning without a thorough and comprehensive study of the entire area, preferably the entire area of the city, under most circumstances?

"*A.* Under most circumstances, I would say we probably wouldn't.

"*Q.* Would it be fair to state that in this case the officials of the planning commission for the city of Walker, or officials from the city of Walker essentially told you that this is what they were interested in doing, and they wanted some alternatives to tell them how they could best do it?

"*A.* No, sir.  I wasn't told by the city officials that this is what they wanted.

"*Q.* If you had your choice, would you prefer to wait until you had had a chance to make a study of the entire city before making a recommendation on this project?

"*A.* If I had my choice, I would always rather have a master plan first.   *   *   *

[*Cross-examination*]

"*Q.* Mr. Dieball, it was your general conclusion, on the basis of what you heard at the March 1 meeting, that the overall concept of rezoning this area for industrial use was a valid one, isn't that right?

"*A.* That's right.

"*Q.* And that this area was an appropriate one for industrial development?

"*A.* That's right.  But if I may qualify this—

"*Q.* Go right ahead.

"*A.* These answers are based on observations at present, and not on observations after a master plan had or would be developed.

"*Q.* At this point you can't look at this in terms of a master plan because you don't have it, is that right?

"*A.* That's right.

"*Q.* But in terms of what you do have, it was your conclusion that industrial zoning for this area in general was valid and appropriate?

"*A.* In this general area, yes.

"*Q.* Now, I assume there could very well have been areas in which you would have come to the conclusion that under no conceivable circumstances could an industrial zoning have fit into any master plan?

"*A.* I think that is true.

"*Q.* And this was not one of those areas?

"*A.* That is true.

"*Q.* In other words, this was an area that, as far as you could tell, would be more likely than not to fit into an industrial category when you got around to make the master plan and were able to make it?

"*A.* Generally I think that is true. I think I stated the request was a valid one. The request to rezone this property was valid. And then there was a statement in the letter following the remark about validity. \* \* \*

"*Q.* And after the funds come in it will take a minimum of 18 months to complete a master plan?

"*A.* It will take 18 months to complete the program which we have outlined for the city.

"*Q.* Does the program culminate in a master plan?

"*A.* That is correct.

"*Q.* So we are talking about a period of two to two and a half to three years involved here from the beginning until you finally come up with a master plan?

"*A.* That's right."

Turning now to the findings and conclusions of the circuit judge. Having concluded that "under the undisputed evidence there is available in Walker City alone land suitable for industrial use sufficient to fill any reasonably expected demand for a period of many years", and then having quoted textual portions of the rezoning case of *South Central Im-*

*provement Association* v. *City of St. Clair Shores*
(1957), 348 Mich 153, 158, the judge reasoned and
ruled:

"I think that applying the test laid down by the
statute to the facts in this case, provides the answer:

"1. The regulation must be made in accordance
with a plan. In this case there was no general plan,
and the rezoning was not a part of any such general
plan. In fact the rezoning comes close to spot zon-
ing, although the area is larger than that involved in
most spot zoning cases. The rezoning does however,
create a comparatively small zone of permitted use
inconsistent with that in the larger area of which
it is a part without any showing of any 'valid need,
in the name of public health, safety or welfare.'
*Trenton Development Company* v. *Village of Tren-
ton* (1956), 345 Mich 353, 357. See also *Penning*
v. *Owens* (1954), 340 Mich 355.

"2. The rezoning is not designed to lessen conges-
tion on the public streets. There may have been a
debatable issue on the question whether it would
increase congestion but certainly it was not a pur-
pose of the rezoning to lessen congestion.

"3. The rezoning does not promote the public
health and safety. In fact the showing was rather
strong that its tendency would be to the contrary.

"4. In my opinion it does not promote the public
welfare, taking into consideration the fact that there
is adequate land available for industrial expansion
and that the placing of a substantial industrial devel-
opment in a residential community cannot help but
be detrimental to that community, particularly
where, as in this case, there are no natural barriers
or buffer zones.

"5. The rezoning is not made with reasonable con-
sideration to the character of the district, the con-
servation of property values in the residential
community, and the general trend in character of
building development. If a change in conditions is

essential to a valid rezoning, then that condition has not been met here. Such change in conditions as has occurred since the original zoning has been in increased residential development, and not in a change toward commercial or industrial development.

"For the reasons stated above I find that the rezoning is not in the public interest within the meaning of that term as used in rezoning cases, that the requirements of the enabling statute have not been met, and that the proposed rezoning of the area is not a proper exercise of the police power."

The foregoing quotations portray factually good reasons for restoration of the judgment of the circuit court. Solidly back of them is the fact that the defendant city, long since equipped with an active city planning commission appointed pursuant to the act of 1931, as amended, has never adopted a § 6 master plan for the physical development of the municipality and its environs. Nor has it done so within the mentioned "enabling statute", save only as may be uncertainly implied from the city's original zoning ordinance or carried in the possibly variant memories of city officials. Thus there is no record to which one rightfully interested may turn for reliable comparison of what may have been planned originally for Walker township and Walker city, and thereafter effectuated to great or less extent, with any proposed amendatory enactment.

The record shows beyond doubt that the only definite plan, on strength of which the defendant city proceeded to rezone March 25, 1966, was that which defendants Greater Grand Rapids Chamber of Commerce and Grand Rapids Industrial Corporation furnished and urged for approval. It is known in the record as "The Case for an Industrial Park in Walker City". That plan cannot be substituted

legally for a § 6 master plan, and it does not give rise to that usually dominant presumption of reasonableness and validity which ordinarily attends the adoption of a municipal zoning ordinance.

A fundamental reason for the manifestly desirable stability of zoning, once it has been ordained and relied upon for any fair period of repose by home builders and homeowners as well as those concerned for industrial, commercial, or other reasons, appears in separate but complementary sections of the text of 8 McQuillin, Municipal Corporations (1965 Rev), §§ 25.06 and 25.68. From § 25.06 (pp 27, 28):

"Amendment or repeal of zoning laws should be just as carefully considered and prepared, perhaps more so, since private arrangements, property purchases and uses, the location of business in commercial or industrial zones, and the making of homes in residential districts, occur with reasonable anticipation of the stability of existing zones. Consequently, procedure in the amendment of zoning ordinances ordinarily embraces safeguards similar to or greater than those of the original zoning, against unreasonable, capricious, needless and harmful rezoning or changes of use classification, including petitions, notices, protests, hearings, study by commissions or committees, and initiative and referendum of amending measures."

From § 25.68 (p 179):

"Since the purpose of zoning is stabilization of existing conditions subject to an orderly development and improvement of a zoned area and since property may be purchased and uses undertaken in reliance on an existing zoning ordinance, an amendatory, subsequent or repealing zoning ordinance must clearly be related to the accomplishment of a proper purpose within the police power. Amendments should be made with utmost caution and only when required by changing conditions; otherwise, the very

purpose of zoning will be destroyed. In short, a zoning ordinance can be amended only to subserve the public interest."

The circuit judge, relying in part upon rules set forth in McQuillin (particularly as quoted above from § 25.68), called attention to another presumption which seems as having come to announcement first in Maryland. It is fairly applicable here. Citing *Offutt* v. *Board of Zoning Appeals of Baltimore County* (1954), 204 Md 551 (105 A2d 219), the judge quoted, in part:

"When an application is made for reclassification of a tract of land from one zone to another, there is a presumption that the zones established by the original zoning ordinance were well planned and arranged and were intended to be more or less permanent, subject to change only when there are genuine changes in conditions. Therefore, before a zoning board rezones a property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification ought properly to be made. [Citing cases.]"

*To Conclude:*

1. The absence of a formally adopted municipal plan, whether mandated by statute or not, does not of course invalidate municipal zoning or rezoning. But it does, as in *Biske, supra,* weaken substantially the well known presumption which, ordinarily, attends any regular-on-its-face municipal zoning ordinance or amendment thereof. This is particularly true of an ordinance purposed toward contradictory rezoning, after years of original zoning upon which concerned persons have come to depend. To paraphrase a widely-known phrase of *Village of Euclid* v. *Ambler Realty Company* (1926), 272 US 365, 388, (47 S Ct 114, 71 L Ed 303, 54 ALR 1016), the entire

or partial intrusion by means of rezoning, of an industrial district upon an established residence district, amounts more and more in these days of constantly increased irritation caused by highway traffic, the noise that annoys, and the industrial fouling of nearby atmosphere, to that which merely is a right thing in or too near the wrong place—"like a pig in the parlor instead of the barnyard."

2. These plaintiffs moved promptly to challenge the rezoning in question. Thus no claim of laches on their part is or could be made; whereas the result might have been different had they delayed until after steps of substance had been taken on strength of the rezoning ordinance of March 25, 1966. These facts are noted specially to avoid misunderstanding of the posture of this purely equitable cause, and to eliminate possible thought that the decretal judgment affirmed here stands as precedent to which slugabeds may turn for relief.

Reversed and remanded for reinstatement of the judgment of the circuit court. Costs of both appeals to plaintiffs.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, T. M. KAVANAGH, ADAMS, and T. G. KAVANAGH, JJ., concurred with BLACK, J.