**E. A. TIPPETT, Appellant,**

v.

**CITY OF PHARR et al., Appellees.**

No. 1482.

Court of Civil Appeals of Texas, Corpus Christi.

May 29, 1980.

Rehearing Denied June 26, 1980.

Gloria Lee Vera, John E. Lewis, Jones & Lewis, McAllen, for appellant.

Morris Atlas, Atlas, Hall, Schwarz, Mills, Gurwitz & Bland, William E. York, McAllen, R. Gaines Griffin, Smith, McIlheran, Lauderdale & Jones, Weslaco, for appellees.

## OPINION

BISSETT, Justice.

The previous opinion in this case is withdrawn and this opinion, reaching the same result, is substituted therefor.

This is a rezoning case. The land involved is the Graham-Young Subdivision, an addition to the City of Pharr, Texas. Plaintiffs in the trial court were numerous landowners who resided in the Richmond Heights Subdivision, which adjoins the Graham-Young Subdivision. Defendants were the City of Pharr, Mayfair Minerals, Inc. and Urban Housing Associates. The Graham-Young Subdivision originally was zoned for single-family residential use. In 1978, the City rezoned the Graham-Young Subdivision from single-family use to multi-family use.

Mayfair Minerals, Inc., is the owner of all lots in the Graham-Young Subdivision, and Urban Housing Associates is the intended developer (for multiple family residences) thereof. Plaintiffs sought to have the rezoning ordinance declared void and its enforcement permanently enjoined.

Following a trial to the Court, sitting without a jury, a judgment was rendered which denied plaintiffs any relief and declared the rezoning ordinance to be valid. E. A. Tippett, one of the plaintiffs in the trial court, has appealed. The parties will be referred to either by name, or as "plaintiff" and "defendants," as they were in the trial court.

Plaintiff presents one point of error. That point reads:

"The trial court erred in rendering judgment for Defendants and against Plaintiffs that Amendatory Ordinance 0–78–042 was a valid exercise of the police power for the reason that the evidence showed as a matter of law that such ordinance is spot zoning unwarranted by any change in conditions in the area and therefore arbitrary and void."

The Graham-Young Subdivision us located in the west central portion of the southeast quadrant of the City of Pharr, near the intersection of two main city arteries, Sam Houston Avenue and U.S. Highway 281. It is not bounded by either of the two streets, but is in an area south of Sam Houston and east of Highway 281. It consists of approximately 10.16 acres, is rectangular in shape, is undeveloped, and though platted, is currently vacant. It is completely surrounded by land which, at the time of trial, was zoned for use as single-family residential. The abutting property north of the tract is developed with a single-family residence. The Richmond Heights Subdivision, which comprises most of the land adjoining the Graham-Young Subdivision on the west, is developed with single-family houses. The remaining adjoining land to the west and all of the land bordering the south and east of the Graham-Young Subdivision was in cultivation at the time of trial. A small tract of land about 200 feet west of the subject land is zoned for industrial use. There are presently single-family residential projects under development in the general area of the tract in question, one of which is located about 900 feet to the southeast, and the other is situated about 600 feet due east. There is also a tract about 900 feet to the northeast of the Graham-Young Subdivision which is zoned for multi-family use. This tract is south of and borders Sam Houston Avenue. Several tracts of land north of Sam Houston Avenue, which are several hundred feet distant from the property involved in this appeal, are zoned for multi-family residential use. Most of these tracts, though zoned multi-family under the comprehensive ordinance, are actually used for single-family residences.

The Graham-Young Subdivision, was zoned for single-family residences in 1974, when the City of Pharr enacted a comprehensive zoning ordinance. According to the City's Code of Ordinances, permitted and conditional uses allowed in single-family zoned areas include single-family dwellings, farming, nurseries, greenhouses, day care centers and kindergartens. Permitted and conditional uses allowed in multi-family zoned areas include apartments, duplexes, hotels, hospitals, private clubs and philanthropic institutions. Pursuant to the practices and procedures under the Comprehensive Zoning Ordinance, all areas originally zoned for single-family residential purposes may be rezoned as conditions change or need arises. Also, all newly-annexed land is zoned for single-family residential use.

Urban Housing Associates' proposed use of the tract in question is the building of a fifty-unit housing project to consist of duplexes and quadplexes. A proposal to rezone the tract was denied by the City's Planning and Zoning Commission. This decision was appealed to the Board of City Commissioners. It reversed the Planning and Zoning Commission's decision and enacted the rezoning ordinance. This decision was appealed to the district court, where, following a trial, the judgment under attack was rendered.

■ Findings of fact and conclusions of law were neither requested nor filed. Therefore, it must be presumed in this appeal that the trial court found every material disputable fact in favor of defendants. This Court can consider only the evidence that is favorable to the judgment, will disregard all evidence in conflict therewith, and must affirm the judgment if it can be sustained on any reasonable theory which finds support in the evidence. *Seaman v. Seaman*, 425 S.W.2d 339 (Tex.Sup.1968).

The power of the City of Pharr to pass the amendatory ordinance, which is under attack in this appeal, is not questioned. Article 1011a [1] gives a city the power to regulate the use of property within its borders by zoning "for the purpose of pro-moting health, safety, morals . . . or the general welfare of the community." Article 1011e authorizes rezoning (in accordance with a comprehensive plan).

■ Generally speaking, zoning ordinances, both original and amendatory, are presumed to be valid. *Thompson v. City of Palestine*, 510 S.W.2d 579 (Tex.Sup.1974). Consequently, an "extraordinary burden" rests on the party attacking the ordinance to show that no conclusive or even controversial or issuable facts or conditions exist which would authorize the City to exercise its discretion. *City of Waxahachie v. Watkins*, 154 Tex. 206, 275 S.W.2d 477 (Tex.Sup. 1955). If reasonable minds may differ as to whether a particular zoning ordinance has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown, and the ordinance must stand as a valid exercise of the City's police power. *Hunt v. City of San Antonio*, 462 S.W.2d 536 (Tex.Sup.1971). A change of conditions is not a necessary prerequisite to rezoning "if the rezoning ordinance bears a reasonable relation to the general welfare and to an orderly plan of zoning development." *City of University Park v. Benners*, 485 S.W.2d 773 (Tex.Sup. 1972).

■ Presumptions of the validity of amendatory zoning ordinances disappear, however, where the facts show that a city has singled out a tract of land on the basis of changed conditions which do not "bear any substantial relation to the public health, safety, morals or general welfare." *Weaver v. Ham*, 149 Tex. 309, 232 S.W.2d 704, 709 (Tex.Sup.1950). The Supreme Court of Texas traditionally has condemned, as spot zoning, an ordinance where a small area is singled out for different treatment from that accorded to similar surrounding land without any showing of justifiable changes in conditions, especially when such preferential treatment is given in an amendatory zoning ordinance which is contrary to a long established comprehensive zoning plan. *Thompson v. City of Palestine, supra.*

1. All statutory references herein are to Tex.Rev.Civ.Stat.Ann. (1963).

Defendants first contend that this is not a spot zoning case. In the alternative, they assert that if the ordinance did provide for spot zoning, that it is based on changed conditions which bear a substantial relation to the public health, safety, morals or general welfare of the community. Spot zoning, in essence, is the arbitrary violation of a community's comprehensive zoning plan. Comprehensive zoning implies the establishment of areas which group the various phases of community life. Therefore, it is vital that areas for industrial, commercial, single-family housing and multi-family housing uses be segregated. This is so in order to insure that living conditions become and remain reasonably predictable. When small areas, whether in the middle of or on the perimeter of a zoned area are rezoned, a hodgepodge of unrelated uses can easily result, which, in effect, would destroy the comprehensive zoning plan. .

A common element present in all cases which have condemned spot zoning is that in each case a small area (in relation to all of the area affected by rezoning) was singled out for treatment which was different from that of surrounding land. See *McWhorter v. City of Winnsboro*, 525 S.W.2d 701 (Tex.Civ.App.—Tyler 1975, writ ref'd n. r. e.). Spot zoning is legal only if justified by a change in conditions which affect the area in question, or where there is evidence of definite community need because of changed conditions which bear a substantial relation to the public health, safety, morals or general welfare which cannot reasonably be met otherwise. *Thompson v. City of Palestine*, supra; *Weaver v. Ham*, supra.

Undoubtedly, in our opinion, the amendatory ordinance involved in this appeal constitutes, as a matter of law, spot zoning because it singles out the land in question for different treatment from that accorded to similar surrounding land. Defendants argue that there is no spot zoning because the tract in question is too large. In a spot zoning case, however, the largeness or smallness of an area are relative, and proper use of the tract in question may

be determined only by comparison. *Mathis v. Hannan*, 306 S.W.2d 278 (Ky.1957). Each case must be determined in accordance with its circumstances and each area of land must be related to its surroundings. See *Raabe v. City of Walker*, 383 Mich. 165, 174 N.W.2d 789 (1970) (180 acres); *Chrobuck v. Snohomish County*, 78 Wash.2d 858, 480 P.2d 489 (1971) (635 acres); *Fasano v. Board of County Commissioners of Washington County*, 264 Or. 574, 507 P.2d 23 (1973) (32 acres). In the case at bar, the tract in question, although comprising approximately 10 acres, is completely surrounded by about 70 acres, of which some 60 acres are undeveloped.

Defendants also argue that there is no spot zoning because most of the surrounding land is vacant and is currently being farmed. This argument, however, is questionable after *Hunt*, in which the Supreme Court clearly held that spot zoning can occur on the perimeter of an area. Thus, the fact that the tract in question is located on the edge of an area already developed for single-family residences, by itself, does not mean that spot zoning does not exist. Furthermore, in a spot zoning case, the significant inquiry concerns the relevant zoning classifications. *McWhorter v. City of Winnsboro*, 525 S.W.2d 701 (Tex. Civ.App.—Tyler 1975, writ ref'd n. r. e.). In the case at bar, the rezoning of the tract in question to multi-family residential, in effect, creates an island within a greater area which is already zoned for single-family residential.

Finally, defendants argue that there is no spot zoning because the tract in question is to be developed with only duplexes and quadplexes, the theory being that there is a relatively small degree of difference between the proposed use of the rezoned tract and the existing use of part of the surrounding land. We do not doubt the quality of the proposed development which involves construction of duplexes and quadplexes; we take judicial notice of the high interest rates which make it increasingly difficult for people to purchase single-family homes. Furthermore, we are well

aware of the fact that there is less density entailed by a development of duplexes and quadplexes than by a high-rise apartment complex. The fact remains, however, that the tract in question has been rezoned from single-family residential to multi-family residential. Therefore, because it is the zoning *classification* which this Court must consider, the quality of the proposed development is immaterial to our decision. *McWhorter v. City of Winnsboro, supra.*

We now turn to the question of whether the spot zoning is justified by changed conditions in the area. Our determination of whether there is any probative evidence of such changed conditions is complex and requires a detailed review of the facts. According to defendants, the following evidence supports their position: 1) there is a need for multi-family housing in Pharr; 2) the population of Pharr has increased from 15,000 to 23,000 since 1970, with most of the increase occurring after 1974; 3) traffic on Sam Houston Avenue and Highway 281, both of which are major streets and in fairly close proximity to the area surrounding the Graham-Young Subdivision, has greatly increased since 1974; 4) the improvements made in the water and sewage facilities in the area since 1974 can now support multi-family housing; 5) although there are other areas in the City zoned for multi-family housing which are undeveloped, such areas do not offer viable alternative sites for a project such as that proposed by Urban Housing Associates; and 6) a trend toward commercial development exists with respect to the general area east of Highway 281.

The evolution of adequate sewage and other utility services is, in our opinion, totally irrelevant to whether a case of spot zoning is justified. Instead, we think that changed conditions can justify spot zoning only if, in some way, they *require* the rezoning of the particular area in question in order to protect or further the health, safety, morals or general welfare of the community. The existence of adequate city services might *permit* or *make possible* a decision to rezone a particular tract; such

services do not *require* such a change. Regarding any evidence of increased traffic and widened streets in the area in question, we rely upon *Weaver, Hunt* and *Thompson* for the proposition that, in a spot zoning case, such evidence fails even to create a fact issue unless the increase in traffic is tremendous or the rezoning in question is substantial. The case at bar does not contain any such evidence. Thus, we are left with the following changes allegedly occurring after 1974 in the area surrounding the tract in question: 1) the city's increase in population; 2) its resulting need for multi-family housing; 3) the unavailability of suitable alternative sites for the construction of the particular complex agreed to be built by Urban Housing Associates; and 4) the trend toward commercial development giving rise to the need for a buffer zone between single-family residential and commercial areas east of Highway 281.

There is evidence that the City has had a substantial increase in population since the comprehensive zoning ordinance was enacted in 1974. There is evidence that the City has a need for multi-family housing. There is also evidence that public housing is needed.

The land in question was one of two sites in the city limits which were evaluated by the developers and the City Housing Authority for the construction of the proposed housing complex by Urban Housing Associates. The other was an 8.6 acre tract north of Sam Houston Avenue and west of Highway 281. The Graham-Young Subdivision was chosen as being the "logical" site for constructing the 50 unit public housing project.

Although there are areas in the City which were already zoned for multi-family housing, many of these areas were actually developed as single-family housing. Of the remaining undeveloped multi-family zoned areas, the witnesses who testified as to the feasibility of developing those lands in order to alleviate the need for multi-family housing, used adjectives such as "limited," "expensive," "not able" and "not financially able" as being the basis for their belief that

existing multi-family zoned areas did not meet the need for multi-family housing.

Some witnesses forecast a trend toward commercial development east of Highway 281, which created a need in the southeast quadrant of the City for a buffer zone between single-family zoned and commercial zoned areas. The Mayor of the City said that if plans for the construction of a bridge into Mexico at the extension of Highway 281 to the Rio Grande River became a reality, he believed that the trend of commercial development along the south of the Highway would increase. With respect to the actual building of the bridge, he stated:

"It's not a concluded fact but everything looks good."

He "anticipated" an increase in commercial development "on the east side" of Highway 281, which he *predicted* will occur some time in the future.

■ The fact that there has been a substantial increase in population within the city limits since the enactment of the comprehensive zoning ordinance in 1974, of itself, does not justify spot zoning in this case. The same is true with respect to the needs for multi-family housing and public housing.

Concerning the need for public housing, the issue in this case is not whether there is a need for the public housing project proposed by the developers which is to be constructed upon the land in question, but *whether the changed conditions furnish a legal basis for rezoning the Graham-Young Subdivision from single-family residential to multi-family residential.* The type of construction, apartments, or duplexes and quadplexes as proposed by Urban Housing Associates, or other types of multi-family housing units, is immaterial to the disposition of this appeal.

■ Considering only the evidence that is favorable to defendants, we are unable to find any support for the theory that the rezoning in question is necessitated by changed conditions which bear any substantial relation to the public health, safety, morals or general welfare of the City. Regarding the issue of alternative sites for the proposed housing project by Urban Housing Associates, the reasons given by the witnesses to explain why the tract in question should be rezoned rather than to develop the areas already zoned for multi-family housing are insufficient as a matter of law to show that the rezoning is necessary as a result of any acceptable changed conditions. The meaning of terms like "limited" and "not able" was not established. The mere fact that alternative sites are "expensive" or that a developer is "not financially able" to build multi-family housing units on such alternate tracts is irrelevant to the question of whether the need for multi-family housing cannot be met by building on already existing sites for such housing. The fact that the tract in question is more "logical" over the other tract evaluated by the developer for the particular housing project contemplated by Urban Housing Associates is also irrelevant to the resolution of the question of whether there are other realistic alternative sites in the City for multi-family housing in general.

■ The theory that the Graham-Young Subdivision should be rezoned to multi-family residential because the trend toward commercial development in the area east of Highway 281 gives rise to the need of a buffer zone between single-family residential and commercial areas is also without merit. There is no evidence of probative value of any such trend or any such need. The statements made with respect thereto are not statements of present facts nor are they statements of conditions which will become matters of fact in the future. All of the statements made concerning the spread of commercial activity from the east side of Highway 281 to the tract in question are based on "if" the bridge is built, and upon "anticipated," or "predicted" commercial growth. The use of those terms render the statements extremely conditional, extremely vague and speculative. They do not constitute a scintilla of evidence either as to a "trend" toward commercial development which gives rise to a "need" for a buffer zone between single-family residen-

tial and commercial areas in the southeast quadrant of the City, which quadrant consists of more than 500 acres of land.

A map of the City was introduced in evidence. It shows that the Graham-Young Subdivision, the 10.16 acre tract here involved, is located approximately 900 feet east of Highway 281. Between that Subdivision and Highway 281 are located several other subdivisions, all of which are platted and are zoned single-family residential. It is, therefore, factually and physically impossible for the Graham-Young Subdivision, by rezoning it to multi-family use, to serve as a buffer zone between the aforesaid single-family zoned subdivisions and commercial areas, since the expanded commercial activity to the east, if any would traverse at least two of four separate subdivisions that lie between the highway and the tract in question, before it reached the Graham-Young Subdivision.

 Considering, as we have, all of the suggested evidence that is favorable to the judgment on behalf of the City, we find that the undisputed facts compel us to hold as a matter of law that the spot zoning of the Graham-Young Subdivision by the City was arbitrary and void. Accordingly, the judgment of the trial court is reversed, and judgment is here rendered that the amendatory ordinance in question is void and its enforcement is permanently enjoined.

REVERSED AND RENDERED.