BRANDAU v. CITY OF GROSSE POINTE PARK.

1. ZONING—PROPERTY OWNERS—RELIANCE.
   Zoning ordained and relied upon for a fair period of repose by property owners should not be readily upset.

2. ZONING—LEGISLATIVE FUNCTION.
   Zoning is primarily a legislative function.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 16.
[2] 58 Am Jur, Zoning §§ 5, 7, 16.
[3, 4] 58 Am Jur, Zoning §§ 229, 231.

3. Zoning—Review—Courts—Basis for Zoning—Fairness.
   The function of courts in zoning cases is to determine if there
   is some rational basis for the zoning in question and to make
   certain that the zoning does not unfairly or unreasonably
   affect the properties of those who contest the zoning.

4. Zoning—Prohibited Use—Confiscation—Constitutional Law
   —Ordinances—Validity.
   A zoning ordinance which prevents plaintiffs from using their
   property for commercial purposes but allows them to use
   their property for residential or parking purposes, and has
   so treated the property of plaintiffs and other like property
   since its enactment more than 40 years before, does not con-
   fiscate plaintiffs' property; where plaintiffs have failed to
   prove unreasonableness of zoning which would result in un-
   constitutionality, the validity of the zoning must be affirmed.

Appeal from Court of Appeals, Division 1, T. G.
Kavanagh, P. J., and Kelley and R. B. Burns, JJ.,
affirming Wayne, Raymond W. Fox, J. Submitted
January 13, 1970. (Calendar No. 6, Docket No. 52,-
371.) Decided April 13, 1970.

15 Mich App 689, affirmed.

Complaint by Edgar Brandau, and other prop-
erty owners similarly situated, against the City of
Grosse Pointe Park, a municipal corporation, for
declaratory judgment that certain provisions of de-
fendant's zoning ordinance are unconstitutional and
for an injunction restraining the enforcement of
those provisions. Judgment for defendant. Plain-
tiff appealed to Court of Appeals. Affirmed. Plain-
tiff appeals. Affirmed.

*William J. McBrearty* and *Dykema, Wheat, Spen-
cer, Goodnow & Trigg,* for plaintiffs.

*Richard D. Rohr* (*Bodman, Longley, Bogle, Arm-
strong & Dahling* and *Michael B. Lewiston,* of coun-
sel), for defendant.

ADAMS, J.   In this zoning case, begun February
21, 1962, plaintiffs seek a determination that certain
city zoning ordinances are unconstitutional as to
their lots.   Plaintiffs' lots (four owned by the Bran-
daus and two by the McBreartys) are situated south
of Jefferson Avenue.   Jefferson Avenue extends
easterly from Detroit through Grosse Pointe Park
and Grosse Pointe Farms.   The lots front on resi-
dential streets which feed into Jefferson Avenue.
The lots are located within a five-block area, are a
part of Windmill Pointe Subdivision and, when ac-
quired, were subject to building and use restrictions
recorded in 1916, limiting use to single-family resi-
dences.   Three of the four lots owned by the Bran-
daus are contiguous; the fourth lot is located four
blocks away.   The two McBrearty lots are contigu-
ous and not connected with the Brandau lots.

The Brandaus' single lot (Lot 354) is located at
the southwest corner of the intersection of Pember-
ton Street and Jefferson Avenue.   It faces east with
a frontage on Pemberton of 94 feet[1] and a side-yard
length along Jefferson of 135 feet.   It was purchased
by the Brandau family in 1917 for $7500.   A city hall
was built on the north side of Jefferson Avenue
across from this lot in 1918.   Immediately north of
Lot 354 on Jefferson Avenue is a bus stop and trans-
fer point.   West of Lot 354 is a bank built in 1957
with an appurtenant parking facility.   Adjoining
the bank property to the west along Jefferson Ave-
nue, east of Barrington Street, is a gasoline service
station built in 1929.   The lots on which the bank
and service station are located have been zoned
for business since 1928.   Across Pemberton to the
east of Lot 354 is a vacant lot (No 481) owned by
defendant city fronting 99 feet on Pemberton and
extending along Jefferson 135 feet.   Immediately

---

[1] Fractional footage has been omitted from lot descriptions.

south and adjoining Lot 354 the city owns vacant land comprised of Lots 355 and 356 having a combined frontage on Pemberton of 150 feet. South of this property are substantial single-family residences.

The three-lot parcel owned by the Brandaus (Lots 625, 626 and 627) is located on the southwest corner of the intersection of Westchester and Jefferson Avenue. The lots face the east along the west side of Westchester Street. They were acquired by the Brandau family as a single parcel in 1919 for $10,500. Lot 625 has a frontage on Westchester of 43 feet and a side length along Jefferson Avenue of 133 feet. Lots 626 and 627 are directly below Lot 625, each having a 50-foot frontage on Westchester and a depth varying from 132 to 163 feet. Behind and immediately west of the three lots is a restaurant, built in 1939, open 24 hours a day, with an area for parking cars. The city has installed parking meters on Jefferson Avenue the full length of Lot 625. A single residence is on the lot to the south of Lot 627 and single-family residences occupy that side of the street for the remaining length of Westchester. Across Jefferson Avenue from Lot 625 is a building housing an insurance company. The city rezoned this property from residential to commercial in 1946 because it was felt there was need for a local insurance service. The insurance building was built in 1949.

The McBreartys purchased Lots 623 and 624 in 1958 for $12,000. The lots face west and are on the southeast corner of the intersection of Lakepointe Street and Jefferson Avenue. Lot 624 has a frontage of 47 feet on Lakepointe and a depth of 143 feet on Jefferson. Lot 623 is immediately south of Lot 624 with a frontage of 60 feet and a depth of 142 feet. Both lots are on the east side of Lake-

pointe, one full block to the east of Lot 354 and approximately 2–1/2 blocks west of Lots 625, 626 and 627. Adjoining the McBrearty lots to the east or back side is a commercial building built in 1928. The first floor is occupied by a furniture store and decorating shop, a liquor store, and an automobile repair and bump shop. Offices and apartment units occupy the second floor of the building. Parking meters have been installed by the city on Jefferson Avenue the full length of Lot 624. Across Jefferson is an automobile salesroom built in 1928 with an open lot for the display of new and used cars. West of Lakepointe is a parcel of vacant land 103 feet wide with a depth of 135 feet along Jefferson which is owned by the city. Single-family residences occupy the entire stretch of Lakepointe south of Lot 623.

At the close of plaintiffs' proofs, the trial court entered a judgment of no cause of action on the ground that plaintiffs had not shown their properties had no value for off-street parking as permitted by ordinance. The Court of Appeals reversed (1966), 5 Mich App 297.

On February 2, 1967, the case was remanded to the trial court for further proofs. (5 Mich App 302.) After defendant had presented its case, the trial court again entered a judgment dismissing plaintiffs' action. The court found:

"On the basis of the testimony offered by the plaintiffs, this court heretofore found that the lots in question had no value for residential purposes. Now that the court has heard the defendant's witnesses, the court finds that the lots in question have value for residential purposes.  *  *  *  The burden of proving the unreasonableness of the ordinance is upon the plaintiffs. In the opinion of the court upon the whole record, plaintiffs have not borne that burden."

Court and counsel inspected the area involved at the time of the 1963 hearing and again in 1967.

Upon appeal to the Court of Appeals, that Court in affirming (1969), 15 Mich App 689, stated (p 692):

"Looking at the evidence produced by plaintiffs, it is apparent that they have not conclusively established that they could not reasonably use their property as zoned. Plaintiffs purchased their property at residential prices fully aware of the restrictions and zoning governing them. However, the record discloses that plaintiffs never made a valid attempt to utilize these lots for residential purposes nor made a serious attempt to sell these lots at residential prices. They have not shown that such attempts would have been useless. Instead plaintiffs have only been interested in commercial prices for their lots and in fact bought on the speculation that the property, if rezoned, would be used commercially."

We granted leave to appeal (381 Mich 815).

Plaintiffs' major attack is upon the zoning ordinance enacted February 27, 1928, which, except for then-existing business uses along Jefferson Avenue, zoned the entire area residential.[2]

On December 11, 1950, effective December 14, 1950, the City of Grosse Pointe Park adopted a charter, the preamble of which reads in part as follows:

"In ordaining and establishing this charter, we do hereby declare that this community is, and always has been predominantly a suburban residential area, and we do hereby counsel all officials of the city to discharge their official duties in such manner as

---

[2] Since it is not necessary for decision in this case, we do not consider the validity of an ordinance adopted February 26, 1962, that requires the consent of the owners of 51% in area of all property which is in certain residential districts and within 300 feet of the location, upon which it is proposed to construct a gas station, carwash or restaurant.

to protect and further such residential character of the community."

The City of Grosse Pointe Park consists of 1275 acres of land. Twenty-eight acres are zoned for business or commercial use. Approximately 18 acres are so developed. The chief commercial areas within the city, according to the testimony of Charles F. Leman, City Planning Consultant, are located along Kercheval and Mack Avenues.

Plaintiffs' lots are somewhat peculiarly situated. If we accept plaintiffs' version, they are immediately adjacent to properties that are presently being utilized either for municipal or commercial purposes and therefore should receive like treatment. If we accept defendant's version, they are part of a predominantly residential area, so zoned by the city since 1928, and therefore are and should be receiving like treatment.

The record contains testimony in support of these conflicting claims—that the lots are suitable and have value for residential use, that they are not suitable and do not have such value—that traffic is so heavy on Jefferson Avenue (22,000 cars per day) as to make the properties suitable only for commercial use, that additional commercial usage along Jefferson Avenue would increase traffic problems and adversely affect residential properties—that plaintiffs' properties would be highly valuable for commercial usage, that vacancies and commercial blight already have taken place in existing commercial buildings. Plaintiffs claim the present zoning is patently spot zoning. Defendant replies that, if it is, such zoning has existed for over 30 years, that the existing commercial spots are wholly adequate to service the community, and that they should not be enlarged to the detriment of residential prop-

erty owners[3] or the careful plans city government has made and followed over the years to determine the kind of city Grosse Pointe Park should be.

Charles F. Leman, City Planning Consultant, describes the city as follows:

"I would say Grosse Pointe Park is a residential community of fine homes primarily. It might be referred to as a bedroom community in that it's a place of dwellings for people who do not work in the community. It's a community without an industry. It's basically a residential community."

When questioned as to whether he had an opinion as a City Planning Consultant if the zoning ordinance was a proper application of zoning principles, Mr. Leman testified:

"Yes, I do from a planning standpoint, if we would start over in this community here we would never put commercial zoning in this location.

"I think the reason that the zoning is there is because much of the business was already there at the time the zoning was first initiated and it was just zoned to reflect existing conditions. *Actually, I think the property that is zoned for residential purposes is properly zoned. It was obviously initially intended and was planned as residential lots.* I can't imagine anyone platting lots to front on residential streets and expecting to use them for commercial business that side on residential streets. These lots were developed for residential purposes.

"From a planning standpoint we think the zoning properly reflects how the land should be used.

"This community from its inception is a part of Detroit, and, was intended as a residential community." (Emphasis added.)

---

[3] There was testimony that there were 11 commercial establishments in the 5-1/2 blocks involved along Jefferson Avenue to serve approximately 230 residential dwellings in that area.

In this case, it is important to note that the zoning primarily under attack has existed for over 30 years. We are not confronted here, as in recently decided *Raabe* v. *City of Walker* (1970), 383 Mich 165, with a case of *rezoning* or of failure to adopt and conform to a master plan. Unlike the situation in *Raabe* (while no master plan is involved in this case), city zoning and city policy have been consistent throughout the years. Consequently, like *Raabe,* this case does meet the proposition that zoning, once ordained and relied upon for a fair period of repose by property owners, should not be readily upset.

Zoning is primarily a legislative function. Our function is to determine if there is some rational basis for the zoning in question and to make certain that the zoning plan does not affect unfairly or unreasonably the properties of those who contest it.

In this case, plaintiffs have failed to prove unreasonableness of the zoning which would result in unconstitutionality either as a plan for a community such as the City of Grosse Pointe Park or in relation to their own properties which have been accorded uniform and consistent treatment with other like properties from the time zoning was first initiated in the 1920's.

Plaintiffs' properties can be used for residential or parking purposes. No confiscation is involved in requiring one use or the other. It may be regrettable from plaintiffs' viewpoint that they cannot utilize their properties for commercial purposes and thereby realize a handsome profit. On the other hand, to permit them to do so on the facts of this case would result in zone busting and consequent detriment to the city and to other property owners that zoning is designed to prevent.

We agree with the findings and conclusions of the trial court and the Court of Appeals. Those courts are affirmed. Costs to defendant-appellee.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, and T. M. KAVANAGH, JJ., concurred with ADAMS, J.

T. G. KAVANAGH, J., did not sit in this case.