BAKER *v* ALGONAC

OPINION OF THE COURT

1. ZONING—REZONING—ADEQUACY OF PROCEEDINGS.

Action taken by city council in approving rezoning of land from single-family residential to multiple-family residential was legally adequate where the planning commission approved the rezoning proposal subject to an informal opinion from their professional planner, based on expert opinion and investigation, the planning commission gave its approval only after intensively questioning the person seeking rezoning, approval was given only after those opposing zoning voiced their protests at a public hearing, and the approval was based on the desire to improve the public welfare.

2. ZONING—REZONING—PUBLIC INTEREST.

The essential question in rezoning is whether the change serves the public interest; a change in conditions of the land rezoned may, in certain cases, be immaterial.

3. ZONING—REZONING—PUBLIC INTEREST.

Rezoning to eliminate a community eyesore and source of of undesirable activity is in the public interest.

4. ZONING—REZONING—VESTED RIGHTS.

No property owner has a right to the continuance of zoning where the public interest in rezoning outweighs the property owner's reliance.

5. ZONING—RESIDENTIAL USES—MULTIPLE-FAMILY DWELLINGS.

Allowing multiple-family dwellings near an area zoned for single-family residences is not incompatible; that someone will profit

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Zoning §§ 9, 10.
[2, 3] 58 Am Jur, Zoning § 26 *et seq.*
[4] 58 Am Jur, Zoning § 198 *et seq.*
[5–8] 58 Am Jur, Zoning § 58 *et seq.*

from developing multiple-family residences does not make them incompatible.

6. ZONING—REZONING.

Rezoning an area from single-family residential to multiple-family residential was proper where experts supported the decision that rezoning was in the public interest where the area was in the path of urban spread and the resulting moderate population density was compatible with the surrounding single-family residential areas.

DISSENT BY TARGONSKI, J.

7. ZONING—REZONING.

*Rezoning was improper when there was no showing of change from the time of the prior zoning, or of mistake in the prior zoning, or of change in the character of the neighborhood.*

8. ZONING—REZONING.

*Rezoning an area from single-family residential to multiple-family residential was not proper where the planning consultant of the city testified that there was no merit to the plans for developing the area into multiple-family dwellings, there was not approval for sewage disposal in the area, the planning consultant's recommended density ratio would be far exceeded by the development, the original zoning would have, according to an expert planner, stabilized values in the area, the problems sought to be solved by rezoning could have been solved without rezoning, the area adjoining the land in question had been bought by people seeking low-density living, the purchasers relied on the zoning in building their houses, and the area would be adversely affected by the rezoning.*

Appeal from St. Clair, Halford I. Streeter, J. Submitted Division 2 December 7, 1971, at Lansing. (Docket No. 11636.) Decided March 27, 1972. Leave to appeal denied, 388 Mich 769.

Complaint by Clarence Baker and others against the City of Algonac for an injunction and other relief to prevent a change in zoning from taking effect. Gordon F. Laramie and Thomas L. Lott were allowed to intervene as defendants. Judgment for plaintiffs. Defendants appeal. Reversed.

*Corden & Flanigan,* for plaintiffs.

*Harvey, Kruse & Westen, P. C.,* for defendants.

Before: McGREGOR, P. J., and BRONSON and TARGONSKI,* JJ.

BRONSON, J. This case arises out of a rezoning dispute involving property located in the City of Algonac, County of St. Clair, Michigan. Located within the city limits are three islands immediately east of the mainland separated from each other by canals. The north island and the south island (known as Escape Island) are presently developed as single-family residential. Paradise Island, the center island, is undeveloped and considerably narrower than the other two islands and is the subject of this controversy.

Defendants Thomas Lott and Gordon Laramie obtained an ownership interest in Paradise Island and requested rezoning from R–1 (single-family residential) to R–M (multiple-family residential). Defendant Lott presented a petition for rezoning to the city planning commission on September 15, 1969. The commission recommended approval of the request to the city council, subject to the opinion of Vilican-Lehman, the professional planning consultants for the City of Algonac. The planning commission met again on September 25, 1969, at which time they had a recommendation of approval from Vilican-Lehman, and sent in their unanimous approval to the city council.

Upon receipt of the planning commission's unanimous recommendation, the city council held a public hearing on October 7, 1969. Plaintiffs, residents of

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the island to the north of Paradise Island and Escape Island (to the south) first learned of the impending rezoning shortly before the council met. They appeared at the meeting and were represented by counsel. Plaintiffs presented their objections to the rezoning. The council nevertheless voted unanimously to rezone Paradise Island from R–1 to R–M. Plaintiffs brought this action to set aside the city council's action.

At trial, plaintiffs introduced evidence in an attempt to prove the city council's actions unreasonable. Plaintiff Wilbur Grimm testified to owning a $52,000 home on Escape Island; initially paying $12,000 for the lot. A 40-foot canal separates his property from Paradise Island. He indicated that Paradise had long been the source of complaints due to litter and immoral conduct by transient boaters. His principal objection to an R–M designation was that it allowed 56 units on the island, thus congesting boat traffic.

Plaintiff James Graves also owns property across from Paradise Island. His objection was that he had relied on the residential zoning when he purchased his home in 1969. He also indicated he would not have purchased had he known of the activities which occurred on the island.

Robert Hollway, chairman of defendant city's planning commission, testified as to the commission's procedures. He indicated that formal notice of commission meetings was not given but that members of the public often did attend. He favored rezoning as a method of eliminating the problems the city was having with the island. His only independent investigation was visual observation and a review of defendant Lott's cost estimates as to whether single-family residential development was possible.

Harold Pockington, secretary of the commission, gave similar testimony.

William Cramer, a St. Clair County Health Department official, stated that it had been department policy not to allow construction without adequate sewage systems; that no permit was ever requested formally for Paradise Island; and that no permits were issued by defendant city from 1966 to 1969.

A planning consultant for Vilican-Lehman, Jay Eldridge, testified that his firm had prepared the city's master plan in 1963. His approval of the rezoning in question was based on the island's unusual dimensions which made residential development costly and the fact that only two-story buildings were permitted. His decision as to cost was based on the information provided to him, but this was not out of line with other cost studies he had seen for similar work in the area. Mr. Eldridge also stated that he was aware of the island's peculiarities when the master plan was established but did not think the rezoning was inconsistent with the plan.

Elmer Jasper, former Mayor of Algonac, stated that he had been aware of defendant Lott's plans for over a year prior to the public hearing due to a business acquaintanceship. His vote on the matter was influenced by a desire to remedy the problems on the island. He was surprised by plaintiffs' attitudes because many of them had complained about activities on Paradise Island. He also noted that he was not aware of any firm request to develop the island in the past 40 years.

Defendant Thomas Lott testified regarding his plans for development and his cost analysis. He indicated it would cost from $178,000 to $218,000 to put the island in shape, excluding roads, utilities, cost of money, platting, engineering core testing, and

a reasonable profit.  The largest cost he foresaw was for sheet piling, which he estimated as being 22–1/2 feet on the average.  Residential development was impractical because the island's shape did not permit building on two sides of the street, making cost sharing impossible.  High-class apartments were planned, which he thought would enhance property values.

Plaintiffs tried to attack defendant Lott's cost estimates by putting property owners Phillip Undieme and Clarence Baker on the stand.  They testified that only 8 to 12 feet of sheet piling was necessary in front of their lots.  Defendant Lott did not dispute plaintiffs' cost projections based on an average 10-foot sheet piling but maintained 22 feet was necessary.

The only witness called by defendants was Dr. Louis Friedland, a community planning expert.  His testimony indicated that Algonac lies in the path of the urban spread and its tremendous growth would continue.  He also indicated that the rezoning was in conformity with the city's master plan and with modern zoning concepts.  He noted that other island properties in Algonac would eventually be suitable for multiple dwellings.  Based on similar experiences in the Detroit metropolitan area, he believed property values would increase.

On the basis of the above testimony, the trial court found the rezoning of Paradise Island unreasonable.  The basis of its opinion is a follows:

"After careful consideration of the testimony and viewing the premises and surrounding area, it is the court's opinion the zoning of R–1 was proper five years ago and in accordance with the master plan of the then village.  There has been no change in this area during the five-year period, except that sewers

are now available. The use of this flat, low-lying
land without sewers was very difficult. It appears
from the testimony that buyers from the Detroit
area purchased adjoining property to get out of high
density areas and apartment areas and to enjoy
single family areas during their later working years
and in view of their retirement.

"These purchasers relied upon the zoning and
upon the nature of the area when they purchased
and built. This area is a very desirable single family
residence area.

"From the testimony, the court is satisfied that
now that sewers are available, this property is eco-
nomically adaptable for single family residence. In
any event, the adjoining residents are entitled to rely
upon the continuous [sic] of single residence zoning
until there is some reason to change it or until there
is a change in the area. There has been no change.
If an area could be rezoned without reason, the
whole purpose of zoning would be thwarted. The
court can think of no area where there is less reason
to change than this one."

Defendant City of Algonac and defendants Gordon
Laramie and Thomas Lott appeal of right the trial
court's judgment.

The defendants contend that plaintiffs failed to
produce clear and satisfactory proof that the city
council of Algonac abused its discretion. They have
thus failed to overcome the presumption of validity
which attaches to a zoning ordinance. *Township of
Farmington* v *Scott,* 374 Mich 536 (1965).

The plaintiffs argue that the record supports
their contention that city officials abused their dis-
cretion. They contend that city officials gave this
request only a cursory independent examination. A
detailed examination of defendant Lott's figures
would have shown them to be erroneous and that
residential development was feasible. Such develop-

ment could not have occurred prior to 1969 since Paradise Island had no sewage system and construction was banned. Residential development would have eliminated the problems on the island and kept it consistent with the city's master plan. Further, no errors in the plan were admitted.

Plaintiffs rely on *Raabe v City of Walker,* 383 Mich 165 (1970), and *Brandau v City of Grosse Pointe,* 383 Mich 471 (1970). In *Raabe,* the Supreme Court invalidated the rezoning of a large tract from residential to commercial. The Court found that such zoning was contrary to surrounding uses and was not made in accord with any adopted master plan for the area. Justice BLACK cited with approval 8 McQuillin, Municipal Corporations (3d ed), § 25.06, pp 27–28. This emphasized the need for caution in rezoning to protect the stability of existing zones. To insure such caution, municipalities should proceed only after listening to protests, hearings, and study. Plaintiffs assert that city officials did not proceed with the required caution.

In the instant case, the planning commission approved the rezoning proposal subject to an informed opinion from their professional planner. They did this only after extensive questioning of defendant Lott. A final recommendation was not given until after Vilican-Lehman had given its approval. That approval was based on expert opinion and investigation. Approval by city council was given only after a public hearing at which plaintiffs voiced their protests. While the defendant city should have given more attention to the matter, we cannot say its action was legally inadequate, final approval being based on the approval of their professional planner and the council's desire to improve the public welfare.

Plaintiffs cite the following language in *Raabe, supra,* to argue that rezoning is valid only when a change in conditions is proven:

" 'Since the purpose of zoning is stabilization of existing conditions subject to an orderly development and improvement of a zoned area and since property may be purchased and uses undertaken in reliance on an existing zoning ordinance, an amendatory, subsequent or repealing zoning ordinance must clearly be related to the accomplishment of a proper purpose within the police power. Amendments should be made with utmost caution and only when required by changing conditions; otherwise, the very purpose of zoning will be destroyed. In short, a zoning ordinance can be amended only to subserve the public interest.' " 383 Mich 165, 177–178.

The *Raabe* Court also approved the trial court's reliance on *South Central Improvement Association* v *St Clair Shores,* 348 Mich 153 (1957). The Court there invalidated the rezoning of an area from residential to light industry and commercial. The basis for that opinion and for the trial court's opinion in *Raabe* was that the rezoning did not serve the public interest. We think that is the essential question in rezoning.

"  *  *  * [W]here a rezoning amendment is reasonably related to the public health, safety or welfare the fact that there has been no change in conditions may be immaterial, and it may be unnecessary to consider whether there has been a mistake in the original zoning or a change in conditions in the zoned area." 8 McQuillin, Municipal Corporations (3d ed), § 25.94, p 267, citing *Costello* v *Sieling,* 223 Md 24; 161 A2d 824 (1960).

Algonac city officials acted in the public interest to eliminate a community eyesore and source of undesirable activity. While it is true that residential

development would have served the same purpose, no such development had ever been proposed to the officials' knowledge. The fact that no development could have occurred from 1966 to 1969 is of little weight in view of the fact that prior to 1966 a permit could have been obtained. In fact, permits for the island to the north and for Escape Island to the south were issued long ago. Neither island had proper sewage disposal at the time of their original development. While these islands developed as residential, Paradise Island remained a barren tract. City officials were justified in their belief that residential development was highly improbable.

Plaintiffs contend that, nevertheless, this rezoning must fail as it violates their property rights, relying on *Brandau* v *City of Grosse Pointe,* 383 Mich 471, 479 (1970). In *Brandau,* the Supreme Court refused to order Grosse Pointe to rezone a tract which long had been residential to commercial. The Court noted that the case was like *Raabe* in "that zoning, once ordained and relied upon for a fair period of repose by property owners, should not be readily upset".

This language does not preclude rezoning nor does it give property owners vested rights in the zoning. It merely means that rezoning should be done with caution. Just as rezoning should not be approved to merely benefit a single property owner, so too rezoning should not be invalidated if the public interest outweighs the property owner's reliance. No owner has a right in the continuance of zoning once established. *Lamb* v *City of Monroe,* 358 Mich 136 (1959); *Pumo* v *Borough of Norristown,* 404 Pa 475; 172 A2d 828 (1961).

This property rights argument reveals the thrust of plaintiffs' complaint. A review of the record in-

dicates two things. One, plaintiffs feel Paradise Island can be developed for single-family residences. They base this on a disagreement with defendant Lott's cost projections as to sheet piling. Plaintiffs ignore the fact that Lott plumbed around the entire island to make his estimate. He did admit that in some places only ten feet of sheet piling was necessary, but maintained that more was needed elsewhere. Plaintiffs merely showed that in two locations only ten feet was necessary; no proof was offered to show that ten feet was needed all around the island. Plaintiffs sought to prove this error in cost to bolster the second thing revealed in the record; apartments will bring too many people into the area and violate plaintiffs' right to live in a low density area. The following comment is revealing as to the underlying objection behind this suit:

"Your Honor, I submit that it is well established that the general trend and character of this neighborhood or of this unit is single family residential and I submit that an apartment complex, 48 units, is not a single family residential. Under no stretch of the imagination is it. I submit that people view apartments as commercial enterprises and I think they are correct in their view. That's exactly what they are."

If this assertion were true, we would be inclined to agree with plaintiffs' position. It is a myth which we feel compelled to put to rest. The proposed apartments are not incompatible with the surrounding areas.

Early regulation and restriction of multiple dwellings followed the rise of tenement housing in the 1830's. Such housing was often poorly constructed and was built with little regard for human sanitary needs. Early cases often came to the courts as a

result of the worst defects, crime and low moral standards. As a consequence judges took the landlord's view that tenements were income producing property. Babcock and Bosselman, *Suburban Zoning and the Apartment Boom,* 111 U Pa L Rev 1040–1047 (1963).

Today, with modern building methods and building codes, municipalities can require that multiple dwellings be safe and sanitary. There is no longer any reason to believe the fears generated by multiples are anything more than speculation. Plaintiffs have produced nothing to convince us otherwise.

The idea which these fears generated, that multiples are mere income producing property, is no longer acceptable to this Court. To us, the profit factor is incidental to the fact that a multiple is a dwelling in which people live. Viewed in this light, it is absurd for plaintiffs to suggest an argument which has as a logical implication the notion that it is wrong to place a single family near a business but all right to place more than one family in the same place.

This nation's critical housing needs make it necessary for us to realistically look at multiple dwellings to satisfy those needs. In 1960, there were 12.6 million (24%) housing units in a deteriorated or delapidated condition. More were obsolete, obsolescent, poorly located or otherwise deficient. The slow rate of progress in corrective programs makes it doubtful that the record is any better today. To meet housing needs generated by population growth and replacement of substandard units, an estimated 2.5 million units per year need to be started. We fall far short of those requirements. Keith, *An Assessment of National Housing Needs,* 32 Law and Contemporary Problems 209 (1967).

It is no secret that the cost of housing has also risen. This means that many of our citizens must rent. Studies have shown that people 20 to 30 years old, the elderly, and those who followed their employers to the suburbs but cannot afford to buy in the area, rent. 111 U Pa L Rev, *supra,* at 1057–1058. Multiple dwellings must therefore meet a large part of our housing needs in the future. More and more they are being built with functions previously associated only with single family residences.

In the instant case, city officials decided, with reason, that rezoning Paradise Island was in the public welfare.[1] Two experts supported that decision. One, Dr. Friedland, indicated that Algonac lies in the path of Detroit's urban spread and that the population density of Algonac will continue to grow. The proposed apartment complex is considered only a moderate population density and is limited by the pecularities of the island. Plaintiffs attempt to stem the tide. Other courts have recognized that multiples are not incompatible with single family residences. See *Bonnie View Country Club, Inc* v *Glass,* 242 Md 46; 217 A2d 647 (1966); *Cheney* v *Village 2 at New Hope, Inc,* 429 Pa 626; 241 A2d 81 (1968). Modern planners have recognized it. We now recognize it. The fact that defendant Lott will profit is immaterial. Someone always profits by the development of land, be it residential or multiple.

---

[1] In *Bristow* v *City of Woodhaven,* 35 Mich App 205 (1971), this Court noted that the term "general welfare" is not a catch-all term used to translate narrow desires into ordinances which discriminate and exclude. The Court recognized that the "general welfare" includes the right of citizens of the general community to decent living facilities within their means. The Court said at 217:

"Citizens of the general community have a right to decently placed, suitable housing within their means and such right must be a consideration in assessing the reasonableness of local zoning prescribing residential requirements or prohibitions. Such zoning may never stand where its primary purpose is shown to operate for the exclusion of a certain element of residential dwellers."

The Supreme Court of Pennsylvania recently said:

"It is not true that the logical result of our holding today is that a municipality must provide for all types of land use. This case deals with the right of people to *live on land,* a very different problem than whether appellee must allow certain industrial uses within its borders. Apartment living is a fact of life that communities like Nether Providence must learn to accept. If Nether Providence is located so that it is a place where apartment living is in demand, it must provide for apartments in its plan for future growth; it cannot be allowed to close its doors to others seeking a 'comfortable place to live.'" *Appeal of Girsh,* 437 Pa 237, 245–246; 263 A2d 395, 399 (1970). (Emphasis in original.)

The same is true here. The fact that Lott wishes to build apartments is indicative of the fact that someone wishes to live in them. Plaintiffs may not close the doors to others seeking a comfortable place to live. To prevent such rezoning they must present more than allegation and speculation to meet their burden of proof. The rezoning is reasonably related to the public welfare and is valid.

Reversed.

McGREGOR, P. J., concurred.

TARGONSKI, J. (*dissenting*). For purposes of disposition of this matter, we will adopt the statement of facts involved and the testimony of the various parties as set forth in the majority opinion, with the following modifications and qualifications. At the trial the planning consultant testified that the site plans as submitted were not deserving of any serious consideration. The health department sanitarian testified that there was no approval for a private sewage disposal arrangement and that he

had informed the realtor to wait with his application for a permit until sewers that were under construction at that time were installed. It was further testified that no permits were issued between 1966 to 1969 for almost the entire city. The lack of construction was not limited to the island which was the subject of the rezoning, but was a prevailing condition generally because of lack of sewage facilities and not because of any other types of limitations.

The planning consultant upon whose opinion the municipal authorities allegedly relied testified that there should be a consideration of density of population and that his recommendation was not over ten people per acre, although the rezoning which is under contest permitted a far greater density. He further testified that his recommendation envisioned a limitation of two stories on the buildings and conceded that the rezoning did not envision any such limitation. In fact one of the intervening defendants testifying for the change in rezoning admitted that under their studies it was economically unfeasible to build four-story buildings but that their study did not lead them to such a conclusion with reference to a 10- or 20-story building or buildings. The expert planner testified that under the Master Plan, Paradise Island was zoned single family and that compatibility of the construction and type of usage would tend to stabilize values.

Testimony also developed that the zoning with reference to Paradise Island existed not only prior to 1965 but also prior to the commencement of the term of the then mayor who served in one capacity or another since 1945. It was also brought out in testimony that all of the conditions which were cited as the reason for change in the zoning in an attempt to clear up the objectionable conduct situations were

in existence as far back as 1965 and even back to 1945.

Under the defendants' presentation of their theory of the case an expert testified as to the feasibility studies that he made for the intervening defendant as to their proposed use of Paradise Island. He conceded, however, that he did not make any studies as to the feasibility of use of Paradise Island as a single family residential operation and consequently the only testimony that was presented as to such single family usage was that of the proposed developers alone.

We are impressed with the careful reasoning set forth in the opinion of the trial court and present the following as a portion thereof which indicates the careful consideration of all of the essential elements of the case. The trial court said in part as follows:

"After careful consideration of the testimony and viewing the premises and surrounding area, it is the Court's opinion the zoning of R–1 was proper five years ago and in accordance with the master plan of the then village. There has been no change in this area during the five-year period, except that sewers are now available. The use of this flat, low-lying land without sewers was very difficult. It appears from the testimony that buyers from the Detroit area purchased adjoining property to get out of high density areas and apartment areas and to enjoy single family areas during their later working years and in view of their retirement.

"These purchasers relied upon the zoning and upon the nature of the area when they purchased and built. This area is a very desirable single family residence area.

"From the testimony, the court is satisfied that now that sewers are available, this property is eco-

nomically adaptable for single family residence. In any event, the adjoining residents are entitled to rely upon the continuous [*sic*] of single residence zoning until there is some reason to change it or until there is a change in the area. There has been no change. If an area could be rezoned without reason, the whole purpose of zoning would be thwarted. The court can think of no area where there is less reason to change than this one.

"Very expensive single residence homes have been built on the adjoining property relying upon the zoning. These owners were entitled to so rely. * * *

"It is the Court's opinion that the construction of an apartment building would destroy to a considerable extent the property owner's rights and would adversely [a]ffect the value of their property."

It is my impression that the facts of this case and the applicable legal principles are identical or at lease comparable with those considered in *Schilling* v *City of Midland*, 38 Mich App 568 (1972). In that case the Court adopted findings of law by the trial court in part as follows:

" ' "When an application is made for reclassification of a tract of land from one zone to another, there is a presumption that the zones established by the original zoning ordinance were well planned and arranged and were intended to be more or less permanent, subject to change only when there are genuine changes in conditions. Therefore, before a zoning board rezones a property, there should be proof either that there was some mistake in the original zoning or that the character of the neighborhood had changed to such an extent that reclassification ought properly to be made. * * * " ' "

In the instant case there was no showing of any change from the time of the prior zoning nor was

there any showing of a mistake in the original zon-
ing or any change in the character of the neighbor-
hood of any substantial degree.  Consequently we
conclude that the rezoning is not a proper exercise
of the police power under the facts of this case.  We
would affirm the judgment of the lower court es-
pecially since its findings of fact appear to be well
grounded in the evidence submitted at trial.