# STATE OF MICHIGAN

# COURT OF APPEALS

CBC JOINT VENTURE,

        Plaintiff-Appellee/Cross-Appellant,

v

THE CITY OF THE VILLAGE OF
CLARKSTON,

        Defendant-Appellant/Cross-
        Appellee.

UNPUBLISHED
September 25, 2018

No. 337750
Oakland Circuit Court
LC No. 2015-149783-CZ

Before: TUKEL, P.J., and BECKERING and SHAPIRO, JJ.

PER CURIAM.

In this zoning dispute, defendant appeals by right the trial court's order granting plaintiff summary disposition of its equal protection and substantive due process claims under MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff cross-appeals by right the trial court's grant of summary disposition under subrule (C)(10) to defendant of plaintiff's takings claims. We reverse in part, affirm in part, and remand for entry of summary disposition in favor of defendant on all counts.

## I. BASIC FACTS

This case arises out of plaintiff's application to have the property located at 59 S Main Street (the Property) in the city of the village of Clarkston rezoned from multiple-family residential to village commercial. The Property is located in the "downtown commercial core district." The building located on the Property was built in 1903 and functioned as a house and office. The building was eventually converted to apartment use, and around 1975, was remodeled to "to accommodate boutique businesses with a small restaurant in the basement." The parties do not dispute that the property was zoned for commercial use from 1975 to 1986, which is when plaintiff purchased the Property. It is undisputed that after plaintiff purchased the Property, the zoning was changed to multi-family residential, which was consistent with plaintiff's plans to use the Property as an apartment building.

According to plaintiff, around 1994, Sharon Catallo, then the mayor of Clarkston, and her husband converted a historic church and parsonage into a restaurant (The Union) and general store, respectively. Those properties are located across S Main St. from the Property. The Union

Woodshop, located a few buildings north of the Union, is also owned and operated by the Catallo family. Specifically, the restaurants are now owned by Sharon Catallo's son, Curt Catallo.

Also relevant to this appeal is property directly north of the Property, 55 S Main St. In 2014, that property was rezoned from multiple-family residential to village commercial, the classification sought by plaintiff in this case. Prior to its rezoning, the property at 55 S Main St. had been in legal, nonconforming use as a dentist's office. See Note 5, *infra*.

In February 2015, plaintiff applied for the Property to be rezoned to "village commercial," with the intent of operating it as a bar and restaurant. The Property contains five apartment units, all of which were occupied during this litigation.

On March 2, 2015, the planning commission recommended that plaintiff's request be granted. Richard K. Carlisle, a professional planning consultant retained by defendant, then analyzed plaintiff's request. Carlisle found that the properties north of the Property and those on the east side of Main Street (across the street from the Property) were all zoned "village commercial." He concluded that "a commercial use of the property would not be incompatible with the zoning and use of other properties in the immediate area." Carlisle was aware that properties to the south were zoned multiple-family residential, but he reasoned that the Master Plan was outdated with respect to the Property (and 55 S Main St.) and suggested that it was improper for the Property to be in the downtown commercial core yet zoned for residential use. In conclusion, Carlisle was inclined to recommend the rezoning, but he suggested that the request should be "more narrowly refined."

At a March 9, 2015 meeting, the city council tabled plaintiff's rezoning request and sent it back to the planning commission for it to address the option of "conditional rezoning" of the Property.[1] Plaintiff submitted an amended application to rezone the Property specifically for use as a bar and restaurant. At an August 3, 2015 planning commission meeting, after public comment, a motion to approve plaintiff's request was defeated. Prior to the city council meeting, William Basinger, the person who had made the motion to zone the property as multiple-family residential in 1986, wanted to present to the council members the reasoning for his position that the Property's zoning should not change. Basinger set forth three main reasons why plaintiff's request should be denied. Basinger stated that

> [t]he request for rezoning is not consistent with the goals and objectives of our Master Plan which include preserving the historic character of the City as a defining trait of the community, protecting the viability of residential neighborhoods and having multiple family housing in the village center to contribute to the vitality of downtown businesses[.]

---

[1] Larry Barnett, one of plaintiff's principal members, elaborated that the "[the city council] wanted it sent back to the Planning Commission for contract zoning. So we presented [the planning commission] a contract plan so we could just do a bar/restaurant, not a funeral parlor or something."

Basinger also asserted that plaintiff had not provided sufficient evidence showing that it could maintain a reasonable return on investment. Further, Basinger noted that there was sufficient land available for restaurant use in the downtown area.

At an August 10, 2015 meeting, the city council, including Sharon Catallo, upheld the planning commission's recommendation to deny conditional rezoning for the Property with a vote of six to one.

## II. PROCEEDINGS BELOW

In October 2015, plaintiff brought suit, alleging that the rezoning denial deprived it of its constitutional rights to equal protection and substantive due process. Plaintiff also alleged that it was denied procedural due process because Sharon Catallo (along with Cara Catallo and William Basinger) had a conflict of interest and improperly influenced the other city council members. Additionally, plaintiff alleged that the zoning of the Property constituted a governmental taking because it was denied economically viable use of the Property.

The parties filed competing motions for summary disposition. The briefs largely focused on whether defendant had treated the Property differently from other properties in the downtown area and whether it had legitimate reasons for doing so. At oral arguments, defendant pointed out that the properties where the Catallo restaurants were located had been zoned for commercial use at the time they were converted to restaurants, and thus those other properties were distinguishable from the Property in that regard. Nevertheless, plaintiff maintained that it was being "singled out" for disparate treatment.

On January 4, 2017, the trial court agreed with plaintiff that the Property was being treated differently than similarly situated property and granted plaintiff summary disposition. The court noted that a "major reason" defendant articulated for the rezoning denial was the need for a "buffer"[2] between non-residential and residential districts. However, the court found that it was undisputed "that several similar properties are zoned commercial without regard to proximity [of] residential zoning." In other words, the court determined, that it was "undisputed that Defendant routinely does not impose the 'buffer' or 'transition' residential restrictions on similarly situated property, and therefore, Defendant's decision to do so with Plaintiff's Property is 'unreasonable and invalid.'" The court also agreed with plaintiff that zoning the Property for commercial use would be consistent with "the City's stated objective in the subject area." The court noted that Carlisle twice (and the planning commission once) recommended granting plaintiff's zoning request and that the Property had been zoned and used for commercial purposes prior to 1986. The court also noted that plaintiff planned to preserve the historic character of the building. For those reasons, the court concluded that the denial of plaintiff's zoning request was arbitrary. Specifically, the court found that "based on the undisputed

---

[2] The trial court and the parties use this term to represent the concept referenced in defendant's zoning ordinance related to how multiple-family districts "generally serve as zones of transition between the non-residential districts and the lower density One-Family Residential District."

evidence before it, Defendant has singled out Plaintiff's Property to apply different standards as applied elsewhere in the area. Defendant's decision to do so is arbitrary and capricious and not based on any legitimate rational reason."

In granting summary disposition in favor of plaintiff, the trial court ordered defendant to approve the rezoning request and enjoined defendant from preventing plaintiff from opening a restaurant and bar as proposed in plaintiff's amended application. But the court also granted summary disposition in favor of defendant as to plaintiff's claims "based on an illegal taking" because plaintiff had failed to establish that a taking occurred.

On March 16, 2017, the court denied defendant's motion for reconsideration. But, in that order, the court clarified that in its January 4 order, it had granted plaintiff summary disposition of its equal protection and substantive due process claims only—the procedural due process claim had been dismissed[3] because the court found it to be moot. Thus, as clarified by the March 16, 2017 order, the January 4 order had disposed of all claims and thus constituted a "final order." MCR 7.202(6)(a)(i). Defendant timely appealed the January 4 order by filing its claim of appeal within 21 days of the denial of the motion for rehearing. MCR 7.204(A)(1)(b). Plaintiff thereafter filed a timely claim of cross-appeal following the filing of defendant's claim of appeal. MCR 7.207(B).

## III. STANDARD OF REVIEW

We review de novo a trial court's grant of summary disposition. *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 215; 880 NW2d 793 (2015). Constitutional questions are also reviewed de novo. *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013).

MCR 2.116(C)(10) allows a trial court to grant summary disposition when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). "To determine if a genuine issue of material fact exists, the test is whether the kind of record which might be developed, giving the benefit of reasonable doubt to the opposing party, would leave open an issue upon which reasonable minds might differ." *Skinner v Square D Co*, 445 Mich 153, 162; 516 NW2d 475 (1994) (quotation marks and citation omitted).

---

[3] Although the trial court did not use the word "dismiss" in its order, that nonetheless is the legal effect after the trial court determined that the claim was moot.

## IV.  DISCUSSION

### A.  PLAINTIFF'S EQUAL PROTECTION CLAIM

Defendant first argues that the trial court erred by not granting it summary disposition of plaintiff's equal protection claim.  We agree.

"The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life." *Robinson v Bloomfield Hills*, 350 Mich 425, 431; 86 NW2d 166 (1957).  Accordingly, courts do not serve as a "superzoning commission."  See *Kyser v Kasson Twp*, 486 Mich 514, 520; 786 NW2d 543 (2010).  In a case involving a land use dispute, the Michigan Supreme Court set forth the applicable equal protection principles:

> The equal protection clauses of the Michigan and United States constitutions provide that no person shall be denied the equal protection of the law.  This Court has held that Michigan's equal protection provision is coextensive with the Equal Protection Clause of the United States Constitution. The Equal Protection Clause requires that all persons similarly situated be treated alike under the law.  When reviewing the validity of state legislation or other official action that is challenged as denying equal protection, the threshold inquiry is whether plaintiff was treated differently from a similarly situated entity.  The general rule is that legislation that treats similarly situated groups disparately is presumed valid and will be sustained if it passes the rational basis standard of review: that is, the classification drawn by the legislation is rationally related to a legitimate state interest.  Under this deferential standard, "the burden of showing a statute to be unconstitutional is on the challenging party, not on the party defending the statute[.]" [*Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318-319; 783 NW2d 695 (2010) (citations and emphasis omitted).]

There are two types of constitutional challenges to statutes and ordinances.  A facial challenge asserts that "no set of circumstances exists under which the [ordinance] would be valid and [t]he fact that the . . . [ordinance] might operate unconstitutionally under some conceivable set of circumstances is insufficient" to render it invalid." *Bonner v City of Brighton*, 495 Mich 209, 223; 848 NW2d 380 (2014) (quotation marks and citation omitted; alterations in original). "[B]ecause facial attacks, by their nature, are not dependent on the facts surrounding any particular decision, the specific facts surrounding [the plaintiff's] claim are inapposite." *Id*.

This case, however, involves an as-applied challenge to the ordinance.  "An 'as applied' challenge alleges a present infringement or denial of a specific right or of a particular injury in process of actual execution." *Paragon Props Co v City of Novi*, 452 Mich 568, 576; 550 NW2d 772 (1996).  In making such a claim, a plaintiff must "show that it was actually treated differently from others similarly situated and that no rational basis exists for the dissimilar treatment." *Shepherd Montessori*, 486 Mich at 319-320.  Such equal protection claims are sometimes referred to as a "class of one" because it is sufficient that a single plaintiff alone is treated differently from others similarly situated. See, e.g., *Village of Willowbrook v Olech*, 528 US 562, 564; 120 S Ct 1073; 145 L Ed 2d 1060 (2000).

"When evaluating whether parties are similarly situated, courts should not demand exact correlation, but should instead seek relevant similarity." *EJS Props, LLC v Toledo*, 698 F3d 845, 864-865 (CA 6, 2012) (quotation marks and citation omitted).[4] To justify disparate treatment, a difference between the parties must be material. *TriHealth, Inc v Bd of Comm'rs, Hamilton Co, Ohio*, 430 F3d 783, 790 (2005). A plaintiff bringing a "class of one theory" bears a "heavy burden." *Loesel v Frankenmuth*, 692 F3d 452, 462 (CA 6, 2012). The relevant inquiry "should be framed in terms of the properties and their owners, not in terms of the stores located on those properties." *Id.* at 463. Thus, the proper comparison is not between the proposed development and the existing properties, but between the property on which the proposed development would take place and the properties on which the existing development sits, and the plaintiff bears the burden of showing that "the government officials had personal animus against the plaintiff, not against the development that the plaintiff was proposing." *Id.* (citation omitted).

The parties largely focus on whether the Property is similarly situated to commercial properties in the downtown area. However, to determine whether plaintiff (and the property) were treated *differently* than similarly situated property owners and properties, the focus must be on those properties that were *granted* commercial rezoning. See *Shepherd Montessori*, 486 Mich at 321 (comparing the plaintiff's denied variance request with the granted variance request of a different entity). In other words, if a property did not need to be rezoned for commercial use, then by definition it could not have been treated differently than the Property because they were not similarly situated to begin with.

Here, plaintiff identifies two properties that were rezoned from residential to commercial use. As noted, the northerly adjacent property (55 S Main St.) was rezoned from multiple-family residential to village commercial in 2014. The property was in a legal, nonconforming use[5] as a dentist's office, and Carlisle found that there was "little likelihood it will be converted to multiple family." Additionally, plaintiff produced a conditional rezoning agreement entered into in 2014 between defendant and a company managed by Curt Catallo to rezone a property in the downtown area (148 N Main St.) from single-family residential to village commercial. The property had been in nonconforming use as an "auto repair business" and the plan was to convert the property to a restaurant.[6] Carlisle concluded that conditional rezoning to village commercial

---

[4] The opinions of lower federal courts are not binding on this Court, but those opinions may be considered for their persuasive value. *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 268; 671 NW2d 125 (2003).

[5] "A prior nonconforming use is a vested right in the use of particular property that does not conform to zoning restrictions, but is protected because it lawfully existed before the zoning regulation's effective date. In other words, it is a lawful use that existed before the restriction, and therefore continues after the zoning regulation's enactment." *Heath Twp v Sall*, 442 Mich 434, 439; 502 NW2d 627 (1993) (citation omitted).

[6] Ultimately, the restaurant (Honcho) was not located at 148 N Main St. Instead, defendant apparently approved the combination of two buildings located at 28 S Main St. (formerly "Morgan's" auto repair shop and 3 Church St. ("the old fire hall") for the location of the restaurant. Rezoning of those properties was not required.

would be more compatible with the surrounding residential area than a non-confirming auto repair business.

However, neither of these properties was similarly situated to the Property because they were in nonconforming use. With respect to 55 S Main St., the property had been used as a dentist's office and there was no contemplation that the property would be converted to multiple-family residential use. To the contrary, the rezoning was sought so that the dental office could be expanded. Moreover, there was evidence that 55 S Main St. had *never* been used as a residence and that the zoning map simply "lumped" it in with the Property. Therefore, the rezoning of 55 S Main St. was essentially a correction of an error that had no bearing on how the property had been or would be used. In contrast, the Property had been used for multiple-family residential, was in use as multiple-family residential at the time rezoning was sought, and plaintiff was seeking to rezone so that it could utilize the Property for an entirely different purpose.

Similarly, regarding 148 N Main St., the property had been used as an auto repair shop for years, in legal nonconformance with the property's single-residential zoning classification. Like the dental office located at 55 S Main St., rezoning 148 N Main St. for commercial use merely reflected the actual use of the property. Rezoning would have and did result in no residential housing being lost because the property had not been in use for that purpose. This is a material difference from the Property, which has been used for multiple-family residential housing for almost 30 years and was fully occupied at the time of plaintiff's rezoning request.

For those reasons, the properties granted commercial rezoning were not similarly situated to the Property.

Plaintiff's reliance on other restaurants and commercial properties in the downtown area is misplaced. Plaintiff paid particular attention to three restaurants now owned by Curt Catallo. However, it is undisputed that rezoning was not required for those properties to be used as restaurants because the properties where the Catallos implemented these restaurants already were zoned for commercial use. In other words, defendant did not have to alter any zoning to accommodate the implementation of these three restaurants, and thus these properties were not similarly situated to the Property, nor were they treated differently. Plaintiff argues that *Loesel*, 692 F3d 452, stands for the proposition that different zoning classifications are always immaterial when considering whether properties are similarly situated. However, plaintiff reads *Loesel* too broadly. In that case, the properties being compared were all zoned for commercial use, albeit under different sub-classifications. The Sixth Circuit noted that the defendant city manager conceded that "there was no difference in terms of how the zoning treated" the two zoning classifications at issue and that "essentially the same regulations appl[ied] to both zones." *Id.* at 464 (quotation marks omitted). Thus, the fact that the properties technically were zoned differently had no tangible effect given the classifications at issue. In this case, by contrast, the litigation stems from the difference between multiple-family residential and village commercial zoning, so the difference is plainly material.

Because there is not a material question of fact regarding whether the Property, and by extension plaintiff, was treated differently than similarly situated properties and their owners, defendant is entitled to summary disposition as to plaintiff's equal protection claim. Thus, we

need not examine whether there was a rational basis for the denial of the rezoning. Instead, we will examine the governmental interests advanced by the present zoning classification in evaluating plaintiff's substantive due process claim.

## B. PLAINTIFF'S SUBSTANTIVE DUE PROCESS CLAIM

For the reasons discussed below, we agree with defendant that it was also entitled to summary disposition of this claim.

Due process, as required by the Fourteenth Amendment to the United States Constitution, US Con Am XIV, contains procedural and substantive components. *Bonner*, 495 Mich at 224. "The underlying purpose of substantive due process is to secure the individual from the arbitrary exercise of governmental power." *People v Sierb*, 456 Mich 519, 523; 581 NW2d 219 (1998). When a plaintiff challenges a zoning ordinance on substantive due process grounds, the plaintiff must overcome the presumption that the ordinance is reasonable "by proving either 'that there is no reasonable governmental interest being advanced by the present zoning classification itself . . . or, secondly, that an ordinance [is] unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.' " *Bonner*, 495 Mich at 227-228; 848 NW2d 380 (2014), quoting *Kropf v Sterling Hts*, 391 Mich 139, 158; 215 NW2d 179 (1974). Three rules of judicial review govern these types of claims:

> (1) the ordinance is presumed valid; (2) the challenger has the burden of proving that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of the property; that the provision in question is an arbitrary fiat, a whimsical ipse dixit; and that there is not room for a legitimate difference of opinion concerning its reasonableness; and (3) the reviewing court gives considerable weight to the findings of the trial judge. [*Frericks v Highland Twp*, 228 Mich App 575, 594; 579 NW2d 441 (1998) (quotation marks and citation omitted).]

Additionally, "[t]o sustain a substantive due process claim against municipal actors, the governmental conduct must be so arbitrary and capricious as to shock the conscience." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 198; 761 NW2d 293 (2008).

As applied to the Property, defendant's multiple-family residential zoning classification advances several legitimate governmental interests. Providing multiple-family housing is a legitimate governmental interest. See *Dorman v Clinton Twp*, 269 Mich App 638, 642; 714 NW3d 350 (2006); *Baker v City of Algonac*, 39 Mich App 526, 539; 198 NW2d 13 (1972). Here, defendant's Master Plan provides that multiple-family residential housing addresses the following purposes: it serves "a diverse residential population" and it contributes to "pedestrian activity" and the downtown's vitality. Zoning the Property, which is located in the downtown commercial core, as multiple-family residential serves those purposes. Importantly, it appears that the Property was fully occupied throughout the litigation and one of plaintiff's principal members testified that vacancies are generally filled within 30 to 60 days.

Further, the zoning ordinance provides that multiple-family residential zoning will serve as a transition zone between non-residential districts and single-family residential housing. "[A] basic goal of land use regulation is to segregate incompatible uses." *Dorman*, 269 Mich App at

360. Plaintiff (and the trial court) focused on the fact that there are other commercial properties abutting residential properties in the downtown area. But this argument misses the mark. As the zoning ordinance provides, an express purpose of multiple-family residential zoning is to provide a "zone of transition" between commercial and single-family residential areas. Accordingly, when considering whether to rezone within a multiple-family residential district, it is appropriate to consider such a zone of transition, a purpose which the Property indisputably serves, and what the loss of such a zone would entail. This does not mean that defendant must impose such a zone, i.e., multiple-family residential housing, between *every* commercial and residential property in town; such a requirement is plainly impractical. In other words, simply because other areas of the downtown do not have zones of transition, it does not follow that having the Property act as such a zone does not advance a legitimate governmental interest.

Moreover, defendant has a legitimate interest in preserving historic buildings. See *Sameric Corp of Delaware, Inc v Philadelphia*, 142 F3d 582, 596 (CA 3, 1998) (holding that the city's decision to designate a building as historic was rationally related to the "legitimate government objective of land-use planning"). Although plaintiff intended to preserve the historic character of the building, there were concerns that converting the Property to a restaurant would not protect its "historic structure since it could not be economically reverted to Multi Family use, if the restaurant failed, after all the apartments and their walls, wiring, kitchen and bath fixtures had been removed." Therefore, plaintiff has failed to show that the zoning decision "is an arbitrary fiat, a whimsical ipse dixit[] and that there is not room for legitimate difference of opinion concerning [the zoning decision's] reasonableness." *Freicks*, 228 Mich App at 594.

For the above reasons, we cannot say that the present zoning classification is unreasonable based on a failure to advance legitimate governmental interests. Nor can we say that the zoning classification or the rezoning denial was arbitrary and capricious. The record shows that after plaintiff acquired the Property in 1986, the zoning for the Property was changed to multiple-family residential, consistent with plaintiff's intended use. Plaintiff has since used the Property as apartment housing for approximately 30 years. Under the Master Plan, there are only two areas designated for multiple-family residential use. There appears to be demand for such housing, given that the Property was fully occupied at the time of the rezoning denial and plaintiff has not had vacancy issues with the property. There also were concerns that if plaintiff's rezoning request was granted, other historic homes would seek rezoning. Although Carlisle recommended that the conditional zoning be approved, defendant's denial of the request is not rendered unreasonable simply because there is a difference of opinion regarding the Property's proper zoning classification. See *id.* Simply put, the rezoning denial does not shock the conscience. Accordingly, the trial court erred in granting plaintiff, rather than defendant, summary disposition of the substantive due process claim.[7]

---

[7] We note that in its cross-appeal, plaintiff does not challenge the trial court's dismissal on mootness grounds of plaintiff's procedural due process claim. Accordingly, that claim is not before us, and we therefore do not address it.

## C. PLAINTIFF'S TAKINGS CLAIMS

On cross-appeal, plaintiff argues that the trial court erred in granting summary disposition *with prejudice* of its takings claim. Notably, plaintiff does not ask us to outright reverse the trial court's grant of summary disposition to defendant on this claim. Rather, plaintiff asks us to clarify that it may bring a takings claim once its claim has accrued. Plaintiff essentially reads the trial court's conclusion that plaintiff had presented a "speculative" takings claim as a ruling that its claim was not yet ripe. But we agree with defendant that the trial court's conclusion was on the merits. See *Dorman*, 269 Mich App at 648 ("[A]n owner may not base his or her claim for just compensation on uncertain and speculative expected profits."). Further, "[a] taking claim ripens when the landowner has received a final decision regarding the application of a regulation to his property." *Oceco Land Co v Dep't of Natural Resources*, 216 Mich App 310, 314; 548 NW2d 702 (1996). Accordingly, a takings claim is not ripe when a township has not rendered a final decision on a rezoning request. *Frenchtown Charter Twp v City of Monroe*, 275 Mich App 1, 6-7; 737 NW2d 328 (2007). Here, because there was a final decision regarding plaintiff's rezoning request, its takings claim was ripe for review. Plaintiff has presented no argument, other than ripeness, as to why the trial court improperly granted summary disposition on this claim. Therefore, we decline to hold that plaintiff's takings claim should not have been dismissed with prejudice.

## D. PLAINTIFF'S 42 USC 1983 CLAIM

We also agree with defendant that because it is entitled to summary disposition of all of plaintiff's constitutional claims, plaintiff may not seek relief under 42 USC 1983. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v Oliver*, 510 US 266, 271; 114 S Ct 807; 127 L Ed 2d 114 (1994).

Reversed in part, affirmed in part, and remanded for entry of summary disposition in favor of defendant on all counts. We do not retain jurisdiction. Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Jonathan Tukel
/s/ Jane M. Beckering
/s/ Douglas B. Shapiro